[No. 628-2.    Division Two.    October 20, 1972.]

THE STATE OF WASHINGTON, *Appellant,* v. EDWARD R. HOWARD, *Respondent.*

*L. Edward Brown, Prosecuting Attorney,* and *Curtis M. Janhunen, Deputy,* for appellant.

*Jack L. Burtch,* for respondent (appointed counsel for appeal).

PEARSON, J.—The state seeks review of an interlocutory order of the trial court suppressing certain evidence which defendant claimed was the product of an unlawful search and seizure. Defendant was charged by information with the unlawful possession of dangerous drugs.

Defendant's motion to suppress was heard on oral testimony that was subject to conflicting interpretations. The trial court accepted a version of that testimony favorable to the defendant and entered findings of fact accordingly. Since the state has not challenged the findings, this court must accept them as verities. *State v. Vidor,* 75 Wn.2d 607, 452 P.2d 961 (1969). *State v. Reed,* 56 Wn.2d 668, 354 P.2d 935 (1960). We need only determine whether or not the facts as found by the trial court furnish a constitutional basis for excluding the evidence. We conclude that they do not.

The material portion of the trial court's findings of fact is set out below.

That Dennis Reams, an officer of the Aberdeen Police Department, Grays Harbor County, State of Washington, on June 18, 1971, at approximately 10 p.m., went to 208½ North Park Street, in Aberdeen, Washington, accompanied by other officers of the Aberdeen Police Department, for the express purpose of serving a Search Warrant at that address. The Search Warrant had been received as a result of several "buys" of narcotics made at that address by an undercover agent of the Washington State Patrol Drug Control Assistance Unit. In the infor-

mation given to the Aberdeen Police Department and used for the purpose of securing a Search Warrant, no mention was made of the defendant, Edward R. Howard, as having been involved with narcotics at said address; that after the Search Warrant was served by Lt. Dennis Reams of the Aberdeen Police Department, and while he was outside of the house, either by or on the public alley, which fronted the house, a car belonging to and driven by the defendant, Edward R. Howard, turned into the alley and proceeded to drive down the alley toward the officer in a westerly direction toward Park Street; that Lt. Reams recognized Edward R. Howard as the driver of said vehicle; that said individual was recognized by said officer as a person that he suspected was the user and dealer of narcotics in Aberdeen; that at all times material to the events leading up to the arrest of the defendant, Edward R. Howard, he was legally operating his motor vehicle on a public street with no intention of knowingly exposing the contents of his car to anyone other than himself and his passenger; that the said officer saw Mr. Howard as said individual's car was approaching the officer, bend over in the car; that the officer believed that Mr. Howard was attempting to hide something; that the car came to a stop near the house where the officer was standing; *that the officer with the express intention of making a search of said automobile walked up to the automobile and flashed his flashlight inside the automobile and made a search of the interior of said automobile; that as a result of said search, he saw a small cellophane packet lying on the floorboard of the car in the front by the gas pedal;* that he immediately made the said defendant, Edward R. Howard, remove himself from the car so that he could seize the cellophane packet which subsequently proved to be amphetamine tablets; that upon a subsequent search of the two occupants of the car, one of which was the defendant, Edward R. Howard, and of the car itself, the Aberdeen Police Department discovered other packets of amphetamines in the automobile and similar packets of amphetamines in the possession of the other occupant of the car. No drugs were found on the person of the defendant, Edward R. Howard. [Finding of fact 2.]

That at the time that the officer of the Aberdeen Police Department made a search of the defendant's automobile and at all times thereafter when the defendant himself

was being searched, the said officer did not have a Search Warrant nor was the said defendant, Edward R. Howard, under arrest; that the said defendant was arrested after discovery of the said drugs. [Finding of fact 3.]

That at the time the officer observed the cellophane packet lying on the floorboard of the defendant's car, the officer had approached the car without any legal justification for so doing. [Finding of fact 4.]

(Italics ours.) There was also evidence that the alley farther down was partially blocked by parked police vehicles. Not included in the findings, but conceded to be a fact, was Officer Reams' testimony that a frisk of defendant after he alighted from the car disclosed a concealed, sheathed knife on defendant's person.

■ The state contends that the "plain view" doctrine should apply even under the facts as found by the trial court, since no search was, in fact, made by Officer Reams. Although the officer's account of the circumstances might have justified application of the "plain view" doctrine, we conclude that the findings made do not warrant an application of that doctrine.

In *State v. Cagle,* 5 Wn. App. 644, 490 P.2d 123 (1971), we considered the constitutional prohibition against unreasonable searches and seizures and the application of the "plain view" doctrine. We pointed out in *Cagle* that, regardless of the time of day or night, the "plain view" doctrine should be upheld against the contention that an unlawful search has occurred, where the officer views contraband when he is rightfully positioned and where the contraband is plainly visible without the necessity of an exploratory or investigatory search. Under such circumstances, the constitutional provision is not violated.

In *Cagle,* police officers observed the contraband in an automobile, after stopping the vehicle for a speeding violation. To the same effect, *see State v. Regan,* 76 Wn.2d 331, 457 P.2d 1016 (1969).

As it will appear later on in the opinion, we think Officer Reams had the right to approach the vehicle and ascertain the intentions of the occupants. However, under the court's

findings, he engaged in a "search" of the vehicle before observing the contraband. That finding rules out an application of the "plain view" doctrine.

Even though the "plain view" doctrine is not applicable because of the court's findings, we think it necessary to consider the applicability of the "stop and frisk" rules recently expanded in *Adams v. Williams*, 407 U.S. 143, 32 L. Ed. 2d 612, 92 S. Ct. 1921 (1972).

This doctrine, if applicable, would allow the introduction of evidence seized as the result of a lawful "stop and frisk" of a suspicious individual. The principles of the doctrine were recognized by the United States Supreme Court in *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968) and have recently been expanded in *Adams v. Williams, supra*.

In *Terry*, a Cleveland police officer personally observed suspicious and possibly criminal behavior on the part of defendant and two other individuals while patrolling in downtown Cleveland, Ohio. The suspicious behavior, from the eyes of an experienced police officer, was that of three men "casing" a store building. He stopped and frisked the men and discovered a concealed weapon on Terry. From his subsequent conviction on the charge of carrying a concealed weapon, Terry's appeals sought the protection of the unreasonable search and seizure provision of the Fourth Amendment.

In rejecting Terry's contention, the Supreme Court recognized that "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." 392 U.S. at 22.

Under *Terry*, the personally observed suspicious and possibly criminal behavior justified the officer in stopping the individual, and the need for self-protection under those circumstances justified the frisk.

In *Adams*, the right to "stop and frisk" was extended to a police officer who did not personally observe the suspicious

behavior, but who was furnished the information concerning that behavior by an unidentified informant. In that case, a police officer was patrolling by car in a high crime area of Bridgeport, Connecticut. A person known to the officer approached his police vehicle and informed the officer that an individual seated in a nearby vehicle was carrying narcotics and had a gun at his waist.

The officer proceeded to the parked vehicle, tapped on the window, and asked the occupant, Williams, to open the door. Instead, Williams rolled down the window. The officer reached through the window and removed a loaded pistol from Williams' waistband. Williams was then arrested and a search incident to the arrest uncovered heroin on his person. A search of the car disclosed more heroin and additional weapons.

In upholding this type of "stop and frisk," a majority of the court reviewed the rules from *Terry* and concluded that the informant's unverified tip carried enough indicia of reliability to justify the officer's forcible stop of Williams and that the unverified information that Williams was armed justified the officer in frisking for the weapon for his own self-protection.

In *Adams v. Williams, supra* at 149, the court stated:

> Under the circumstances surrounding Williams' possession of the gun seized by Sgt. Connolly, the arrest on the weapons charge was supported by probable cause, and the search of his person and of the car incident to that arrest was lawful.

We have dealt with the facts of these cases quite extensively because both of them recognize the necessity for police action where suspicious circumstances are presented *and* where the need exists for the police officer to protect himself against possible violence while carrying on his extrahazardous duties.

The trial court stated in its oral ruling and concluded in finding of fact 4 that the officer had approached the car without any legal justification for so doing. Since this is a

legal conclusion and not a finding of fact, we are not bound to accept it, and we do not.

We think Officer Reams had a right and duty as a police officer to approach the vehicle and determine why the vehicle had stopped at that particular time and place. We say this because the officer was engaged in official police work executing a search warrant, pursuant to court order. Any potential interference with that work would be a matter of legitimate police concern.

When defendant's vehicle came to a stop at night near the door at the rear of the residence being searched, Officer Reams had a duty to (1) ascertain that its occupants would not interfere with the search; (2) ascertain what business, if any, the occupants had at the address. Good police investigation would, in this case, as in *Adams*, justify the approach to defendant's vehicle in order to maintain the status quo and to obtain further information concerning the purpose of the vehicle's presence at the locus of the search.

Likewise, an officer under those circumstances would be justified in making a frisk for weapons. This is particularly true in this case, where Officer Reams had prior knowledge that defendant carried a concealed knife, and where he observed suspicious behavior by the driver. Such a frisk would reasonably require the occupants to alight from the vehicle, as was done here. The frisk that occurred did, in fact, turn up a sheathed hunting knife.

Had Officer Reams immediately placed defendant under arrest after finding the knife (as he had a right to do), the search which disclosed the drugs on the floor of the front seat would have been lawful as a search incident to a lawful arrest. *Adams v. Williams, supra.* Since no arrest was made until after the packet of drugs was discovered, according to our interpretation of the court's findings, we must determine whether or not Officer Reams had a right to search with his flashlight the area around where defendant was seated, either before or after defendant had alighted from the vehicle.

We hold that a reasonable frisk for weapons under the

circumstances here presented need not be confined to a personal frisk of the occupants of the vehicle, but should extend to the area of the car reasonably accessible to the occupants. Such area must at least include the front seat and floor of the vehicle. A realistic appraisal of the risk to a police officer under the circumstances of this case demands this extension of the right to frisk.

It is our further holding that Officer Reams had the right to inspect the interior of the car with his flashlight, either before or after asking the occupants to alight. To hold otherwise would be to close our eyes to the officer's safety.

` As a consequence of this holding, the discovery of the drugs by the officer was the product of a reasonable "stop and frisk." The finding of the trial court that Officer Reams "flashed his flashlight inside the automobile and made a search of the interior" does not, therefore, provide a constitutional basis for excluding the drugs which were observed as a result of that search.

The order of the court suppressing the packet of drugs is vacated and the case is remanded with instructions to deny the defendant's motion to suppress.

PETRIE, C.J., and ARMSTRONG, J., concur.

Petition for rehearing denied November 27, 1972.

Review denied by Supreme Court January 23, 1973.