[No. 499-3.   Division Three.   December 7, 1972.]

THE STATE OF WASHINGTON, *Respondent*, v. GEORGE ALBERT ZANTUA, *Appellant*.

GREEN, J., dissents by separate opinion.

*Thomas J. Brennan,* for appellant.

*E. R. Whitmore, Jr., Prosecuting Attorney,* for respondent.

MUNSON, C.J.—Defendant appeals a jury conviction for possession of a firearm by a person previously convicted of a crime of violence.[1]

_____
[1] RCW 9.41.040.

The sole issue upon appeal is whether an unreasonable search was conducted by the police.[2] We find the search to have been reasonable.

On July 31, 1971, at approximately 10:30 p.m., a Chelan County Deputy Sheriff observed defendant, a black man, walking down a street in Cashmere, Washington, 50 to 100 feet behind a blond man. The deputy stopped the men and inquired where they were from and if they were together. They advised him they were together and looking for a pub. The deputy's suspicions were aroused by the men walking in tandem, their presence in that neighborhood, and the fact one was wearing a jacket on a warm evening. He began patroling the surrounding area. Several blocks away he observed a Datsun automobile, bearing King County license plates, parked on a side street. Approaching the vehicle, he noticed a girl lying on the driver's seat. Upon questioning, she admitted the two men above referred to were with her.

The girl could not produce an auto registration, or any identification other than a driver's license. The deputy took the car keys, returned to his patrol car, and radioed for a registration check on the auto. At this time, the men returned to the area of the Datsun. Defendant's companion came to the deputy's patrol car, demanding the car keys. The deputy advised him he desired to interview each separately. Defendant, who had been sitting in the passenger side of the Datsun, went to the patrol car, was interviewed, and produced questionable identification. He returned to the Datsun again, whereupon it appeared to the deputy that the two men had a heated discussion. The other man then came back to the patrol car, was interviewed and could not produce any identification.

At this time, another deputy sheriff arrived, accompanied by a postman, Mr. Ward; defendant's companion was advised he would be checked for identification and possibly a

---

[2]Fourth amendment to the United States Constitution and article 1, section 7 of the Washington State Constitution.

weapon. He immediately fled on foot; the newly arrived deputy pursued him unsuccessfully; his identity is still unknown. The other deputy handcuffed defendant,[3] leaving him in temporary custody with the postman, Mr. Ward, walked to the Datsun and, with the aid of a flashlight, observed a box of .32 caliber cartridges on the back seat.[4] He then went to the passenger side of the Datsun, the girl sitting in the driver's seat, opened the glove compartment, and therein saw a billfold. Behind the billfold he found a loaded revolver. Defendant, upon being shown the revolver, admitted it was his. Although at trial the girl testified the revolver was hers, a jury convicted defendant of possession of a firearm by a person previously convicted of a crime of violence.

The sole issue is whether, under these circumstances, the deputy's search of the glove compartment was unreasonable under the stop-and-frisk doctrine enunciated in *Terry v. Ohio,* 392 U.S. 1, 15-26, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968). Chief Justice Warren, writing for the court, stated:

> No judicial opinion can comprehend the protean variety of the street encounter, and we can only judge the facts of the case before us. Nothing we say today is to be taken as indicating approval of police conduct outside the legitimate investigative sphere. . . .
>
> . . . .
>
> . . . . A search for weapons in the absence of probable cause to arrest, however, must, like any other search, be strictly circumscribed by the exigencies which justify its initiation. . . . Thus it must be limited to that which is necessary for the discovery of weapons which might be used to harm the officer . . . , and may realistically be characterized as something less than a "full" search, even though it remains a serious intrusion.

In this case, the initial contact with the two men involved no illegal conduct, but their actions did arouse the deputy's curiosity. As the situation developed, his curiosity grew into suspicion. There is no accusation, inference, or

---

[3]This restraint is not challenged.

[4]A .32 caliber weapon was found along the path of pursuit of the man fleeing the area, but this fact was not known to the deputy when he searched the glove compartment.

intimation of harassment or undue aggressiveness by the deputy toward these individuals. Until defendant's companion fled, the deputy had the three individuals within his view at all times. He had no way of knowing, however, where the second man was once he made good his departure and the deputy had reason at that time to be concerned for his safety. The girl also presented reason for concern. Admittedly, once the deputy had handcuffed defendant he could have removed the girl from the auto and thus relieved himself from the possibility of harm from anything within the auto. The instantaneous reaction of the deputy was not such a serious intrusion into the rights of the defendant as to be violative of the federal and state constitutions. *Terry v. Ohio, supra,* and *Sibron v. New York,* 392 U.S. 40, 20 L. Ed. 2d 917, 88 S. Ct. 1889 (1968) involved limited searches of the persons. *Cf. Adams v. Williams,* 407 U.S. 143, 32 L. Ed. 2d 612, 92 S. Ct. 1921 (1972) (a defendant seated in an auto). We conclude, however, the exigencies of the circumstances justified the extremely limited search in this case; to do so here is not an unreasonable extension of the spirit of *Terry v. Ohio, supra.*[5]

Judgment affirmed.

EDGERTON, J., concurs.

GREEN, J. (dissenting)—I do not believe this to be a stop-and-frisk case under *Terry v. Ohio,* 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968); *Sibron v. New York,* 392 U.S. 40, 20 L. Ed. 2d 917, 88 S. Ct. 1889 (1968); or *Adams v. Williams,* 407 U.S. 143, 32 L. Ed. 2d 612, 92 S. Ct. 1921 (1972). Additionally, there was no legal basis for defendant's arrest; therefore, the search cannot be justified as one incidental to arrest. An incident search may not precede a lawful arrest and serve as part of its justification. *Sibron v. New York, supra.* Consequently, I believe the decisions of the United States Supreme Court, unless modified, require that I dissent.

Petition for rehearing denied November 12, 1973.

Review denied by Supreme Court February 4, 1974.

---

[5] *Cf. State v. Howard,* 7 Wn. App. 668, 502 P.2d 1043 (1972).