[No. 1847-2.    Division Two.    July 23, 1976.]

THE STATE OF WASHINGTON, *Respondent*, v. WILLIAM MALBECK, *Appellant*.

*John R. Rutz* (of *Niichel & Rutz*), for appellant.

*Craig Ritchie, Prosecuting Attorney,* for respondent.

PEARSON, J.—William Malbeck appeals his conviction of unlawful possession of methamphetamine, a controlled substance. The single issue is whether the trial court erred in denying the defendant's motion to suppress the drugs, hypodermic needles, and syringes found during a search of his car. We affirm the conviction for the reasons discussed below.

On January 23, 1975, Trooper DeSmith of the State Patrol observed an automobile traveling at a high rate of speed on Highway 101 in Jefferson County. He pursued the vehicle, pacing it at 90 to 100 miles per hour westbound

into Clallam County. Because of the speed involved and curves in the highway, it took the trooper about 10 miles to catch up sufficiently with the speeder to stop him. As the car slowed, the front seat passenger, Thomas Lundstrom, bent over as if to hide something under the seat. The driver, Malbeck, stopped the car partially on the roadway and, as he exited the vehicle, said "You got me this time." Keeping his "eye on" Lundstrom, the trooper arrested Malbeck for reckless driving, as authorized by court rule,[1] and placed him in the patrol car. The trooper then went to the passenger's side of Malbeck's car, opened the door, and asked Lundstrom for identification. Lundstrom showed his 1973 driver's license that "appeared to be altered." In the interests of his own safety, Trooper DeSmith thought he should investigate the area under the seat. Lundstrom was directed to slide toward the driver's side, and the trooper reached under the passenger's seat and found a loaded .38 caliber revolver. Lundstrom was also placed in the patrol car.

A radio check produced the information that the detained car was registered to neither occupant, but to a Mr. Waest of Renton. Malbeck displayed a registration form listing Waest as the owner, but also told Trooper DeSmith he had proof of ownership in the glove compartment. The record indicates that the proof consisted of receipts from Mr. Waest given to Malbeck as purchaser. Malbeck had no official registration or certificate of title in his name.

Rather than release the car to Malbeck or Lundstrom, the trooper determined to impound it and to inventory its contents for safekeeping. The inventory procedure yielded two small leather bags, one containing pills and packets of methamphetamines and the other holding needles and syringes. These were the items the defendant sought to suppress at a pretrial hearing.

Defendant's argument, first , is that the warrantless search under his car seat was unreasonable under the fourth and fourteenth amendments to the United States

---

[1] JTR 2.02 (b) (1), (2); JTR 2.03 (b).

Constitution, and article 1, section 7 of the Washington State Constitution. The trial court ruled that the officer was entitled to search that area as a precaution against personal injury. We agree.

It is by now axiomatic that a police officer may conduct a carefully limited, self-protective search of a person whom he has lawfully stopped for investigation and reasonably believes to be armed. *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968). Following the application of this rule to a person seated in an automobile in *Adams v. Williams*, 407 U.S. 143, 32 L. Ed. 2d 612, 92 S. Ct. 1921 (1972), we held that a reasonable self-protective search under proper circumstances

> need not be confined to a personal frisk of the occupants of the vehicle, but should extend to the area of the car reasonably accessible to the occupants. Such area must at least include the front seat and floor of the vehicle.

*State v. Howard*, 7 Wn. App. 668, 675, 502 P.2d 1043 (1972). *See State v. Zantua*, 8 Wn. App. 47, 504 P.2d 313 (1972).

In this case, before the car came to a stop, Lundstrom bent over and appeared to secrete something under the car seat. We are convinced that a "furtive gesture" of this sort does not, alone, supply probable cause for the officer to believe a vehicle occupant may be armed and dangerous. *United States v. Humphrey*, 409 F.2d 1055 (10th Cir. 1969); *People v. Superior Court*, 3 Cal. 3d 807, 478 P.2d 449, 91 Cal. Rptr. 729, 45 A.L.R.3d 559 (1970). However, where other circumstances combine with the suspicious movements of a driver or passenger of a legally stopped automobile to raise a reasonable apprehension of harm in a prudent, cautious, trained officer, he is warranted in conducting a limited search of the area of the car remaining accessible to the occupants. *State v. Howard, supra; United States v. Green*, 465 F.2d 620 (D.C. Cir. 1972); *United States v. Humphrey, supra; United States v. Thomas*, 314 A.2d 464 (D.C. App. 1974).

This search involved additional circumstances significantly different from the routine traffic stop. The driver,

Malbeck, had been placed under arrest following a 10-mile, high-speed chase. The vehicle's registration was unverified. Lundstrom produced an expired, apparently altered driver's license. These suspicious facts substantiate the trooper's inference that Lundstrom had perhaps concealed a weapon under the seat he still occupied, and the trooper's reach into that area on the stated grounds of self-protection. The revolver was the product of a permissible search.

The defendant next contends the inventory search of his automobile was improper because the car's impoundment was a mere pretext for the search. He argues there was an alternative available, namely, release of the vehicle to Lundstrom, which renders the impoundment unjustified and the search invalid.

An inventory search incident to impoundment of a vehicle must be

> conducted in good faith for the purposes of (1) finding, listing, and securing from loss during detention, property belonging to a detained person, (2) protecting police from liability due to dishonest claims of theft, and (3) protecting temporary storage bailees against false charges. *State v. Montague,* [73 Wn.2d 381, 385-87, 438 P.2d 571 (1968)].

*State v. Gluck,* 83 Wn.2d 424, 428, 518 P.2d 703 (1974). We are alert to the possibility of an inventory search being used as a pretext for making a general exploratory search of a car without a warrant. *State v. Montague,* 73 Wn.2d 381, 438 P.2d 571 (1968); *State v. Potts,* 1 Wn. App. 614, 464 P.2d 742 (1969); Note, *Warrantless Searches and Seizures of Automobiles,* 87 Harv. L. Rev. 835, 848-53 (1974). Whether an inventory search is a mere pretext for an exploratory search for contraband or pursuant to reasonable grounds for impoundment depends on the circumstances of each case. *State v. Greenway,* 15 Wn. App. 216, 547 P.2d 1231 (1976); *State v. Jones,* 2 Wn. App. 627, 472 P.2d 402 (1970).

We recognize further that the burden is on the State to demonstrate reasonable cause for impoundment of a vehicle. *State v. Singleton,* 9 Wn. App. 327, 511 P.2d 1396

(1973). However, that test was met in this case. The car was on the shoulder of a well traveled highway. Both Malbeck and Lundstrom were in custody—the former unable to produce a proper registration or title and under arrest for reckless driving, the latter awaiting investigation and resolution of the apparent crime of carrying a loaded pistol in the vehicle without a permit.[2] Lundstrom possessed an invalid license. These were ample grounds for the trooper's decision to impound the car. Accordingly, sound police practice dictated that an inventory be taken of the car's contents to protect the arrestee, the police, and the towing company. The paraphernalia and drugs discovered during the inventory search were admissible. *State v. Montague, supra.*

Judgment and sentence affirmed.

PETRIE, C.J., and REED, J., concur.

Petition for rehearing denied September 16, 1976.