[No. 26010-1-III.   Division Three.   April 24, 2008.]

THE STATE OF WASHINGTON, *Respondent*, v. TANA LOY SMITH, *Appellant*.

---

*Lila J. Silverstein* (of *Washington Appellate Project*), for appellant.

*Andrew K. Miller*, *Prosecuting Attorney*, for respondent.

¶1 THOMPSON, J.[*] — Law enforcement officers drew their guns and ordered occupants out of a car that had arrived at a residence where police were about to serve a search warrant. The officers had no reasonable articulable suspicion occupant Tana Loy Smith had committed or was about to commit a crime or that she was a threat to anyone's safety. As a result of the detention, police found methamphetamine in the car. We conclude that the seizure violated Ms. Smith's Fourth Amendment rights and reverse the trial court's denial of her suppression motion and the conviction upon which the evidence is based.

¶2 On the afternoon of April 5, 2006, city of Richland Police Detective Curtis Smith[1] led a team of officers to a location around the corner of a residence for which they had obtained a warrant to search. As Detective Smith was set to execute the warrant, a sport utility vehicle (SUV) pulled into the driveway. Two men got out of the car and went to the door. Two women, Marcy Northey and Tana Loy Smith, remained inside the car. The SUV was not listed in the search warrant. Nor were any women named in the warrant. The purpose of the SUV visitors' presence was not known to the officers.

¶3 A detective conducting a presearch surveillance of the residence reported the presence of the visitors to Detective Smith, who later recounted, "I kind of had to change my tactical plan on the fly to incorporate these new bodies into the warrant." Report of Proceedings (Jan. 17, 2007) (RP) at 7. He therefore "reassign[ed] [the detective] and a couple

---

[*] Judge Philip J. Thompson is serving as judge pro tempore of the Court of Appeals pursuant to RCW 2.06.150.

[1] Although Detective Smith shares the common surname with Ms. Smith, we have been provided no information that they are related.

other officers to take control of the SUV and the occupants." *Id.*

¶4 As Detective Smith and his team came around the corner to conduct the knock-and-announce, three or four officers simultaneously contacted the two women in the SUV. Ms. Smith and Ms. Northey were ordered out of the car at gunpoint and forced to the ground. Detective Smith later justified the detention of the women by stating, "[I]f I flow past them with my main body of entry, my main entry element, it opens up our back side and we don't know what these people are doing there." *Id.* at 25.

¶5 Detective Smith testified that after securing the house, he "shifted into an investigation mode and went back outside to the second scene," where the other officers were holding the women. *Id.* at 10. As Detective Smith questioned Ms. Northey, he noted that "she was having difficulty staying on task." *Id.* at 13. He also "checked [her] pulse and noted an elevated pulse rate," characteristics he attributed to methamphetamine use. *Id.* He noted that Ms. Smith was grinding her teeth, her pupils were dilated, she had attention difficulty, and she had an abnormally high body temperature. He further testified that both women smelled of methamphetamine.

¶6 When the detective retrieved Ms. Northey's purse from the SUV to examine her identification, he detected the odor of methamphetamine, saw a prescription bottle with its label scratched off, and saw smoking devices. Both Ms. Smith and Ms. Northey eventually confessed to having smoked methamphetamine. The pipes tested positive for methamphetamine.

¶7 The State charged Ms. Smith with possession of methamphetamine. Ms. Smith moved to suppress all of the evidence discovered during what she characterizes was an unconstitutional seizure, which lacked individualized suspicion of danger or wrongdoing. The State argued that Ms. Smith's detention was justified under *Michigan v. Summers*, 452 U.S. 692, 101 S. Ct. 2587, 69 L. Ed. 2d 340 (1981) and *State v. King*, 89 Wn. App. 612, 949 P.2d 856 (1998),

which hold that officers may lawfully detain the occupants of a home during execution of a search warrant.

¶8 At the suppression hearing, the trial court orally found:

> As a result of Detective Smith and the other officers being on the entry team, those officers certainly had concern for their safety with individuals to the rear of them. The females, then, were also asked to exit the vehicle. . . .
>
> . . . .
>
> . . . [I]t's clear then that the officers had a search warrant allowing them to search this residence. The individuals named in the search warrant are males. And, apparently, vehicles located at that residence. This SUV apparently was not named in the search warrant. However, because of the timing of the arrival of this SUV to a location where a proper search warrant was had for this residence, because of the concerns for officer safety, the Court finds that under the *King* case . . . it was appropriate in this particular instance for the officers to command and take control of the scene. They had the right to do that.
>
> The Fourth Amendment's key principal is always what is reasonable under the circumstances. Certainly, once the officers have a search warrant in hand, that search warrant allows them to take command of the scene. And that includes the situation where a[n] SUV unknown to the officers suddenly arrives, pulls up into the driveway adjacent to the ingress and egress points of the this [sic] house that the officers have a lawful warrant to search.

RP at 32-34.

¶9 The trial court denied the motion to suppress, holding that because the initial detention was justified the scope of the stop was expanded by the circumstances that presented themselves to the detective. The court did not enter written findings of fact and conclusions of law. Ms. Smith was convicted after a bench trial on stipulated facts. This timely appeal follows.

¶10 On a motion to suppress, we generally review factual findings for substantial evidence and conclusions of

law de novo. *State v. Mendez*, 137 Wn.2d 208, 214, 970 P.2d 722 (1999), *overruled on other grounds by Brendlin v. California*, 551 U.S. 249, 127 S. Ct. 2400, 168 L. Ed. 2d 132 (2007). No findings of fact or conclusions of law were entered here as required by CrR 3.6(b). Failure to enter findings and conclusions is error, but it is harmless if the trial court's oral findings are sufficient to permit appellate review. *State v. Johnson*, 75 Wn. App. 692, 698 n.3, 879 P.2d 984 (1994). The error is harmless here.

¶11 The trial court made an oral ruling in which the undisputed evidence was recounted and legal conclusions were made. The parties do not dispute the essential facts. Because the issues here are strictly of a legal nature, formal findings and conclusions are less crucial. *See State v. Tagas*, 121 Wn. App. 872, 875-76, 90 P.3d 1088 (2004).

¶12 The issue here is clear: whether police may lawfully seize at gunpoint and detain for investigation the two occupants of a car who appeared in the driveway of a residence at which officers are preparing to execute a search warrant when neither the vehicle nor any woman was named. We hold that they may not.

¶13 The Fourth Amendment to the United States Constitution, made applicable to the states by the Fourteenth Amendment, guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV; *Mapp v. Ohio*, 367 U.S. 643, 81 S. Ct. 1684, 6 L. Ed. 2d 1081 (1961). A warrantless seizure is presumed unreasonable under the Fourth Amendment. *State v. Houser*, 95 Wn.2d 143, 149, 622 P.2d 1218 (1980).

¶14 The presumption of unreasonableness may be rebutted by a showing that one of the "few 'jealously and carefully drawn exceptions' to the warrant requirement" applies to the case under consideration. *Id.* (internal quotation marks omitted) (quoting *Arkansas v. Sanders*, 442 U.S. 753, 759, 99 S. Ct. 2586, 61 L. Ed. 2d 235 (1979)). "The State bears the burden of showing a seizure without a

warrant falls within one of these exceptions." *State v. Kinzy*, 141 Wn.2d 373, 384, 5 P.3d 668 (2000).

¶15 The most fundamental of the exceptions to the warrant requirement is the detention of a person that an officer has probable cause to believe has committed a crime. *King*, 89 Wn. App. at 618 (citing *County of Riverside v. McLaughlin*, 500 U.S. 44, 56, 111 S. Ct. 1661, 114 L. Ed. 2d 49 (1991)). A second, narrower exception is an investigative *Terry* stop, based upon less evidence than is needed for probable cause to make an arrest, which permits the police to briefly seize an individual for questioning based on specific and articulable objective facts that give rise to a reasonable suspicion that the individual has been or is about to be involved in a crime. *Id.* (citing *Terry v. Ohio*, 392 U.S. 1, 21, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968)); *State v. Armenta*, 134 Wn.2d 1, 10, 948 P.2d 1280 (1997).

¶16 Neither of these exceptions applies here. The officer expressly testified that he did not know why the women were present. He could not, therefore, and did not, have probable cause or reasonable suspicion that these women were involved in criminal activity.

¶17 "A third, *still narrower* application is that even without probable cause or reasonable suspicion of criminal activity, it is reasonable for an officer executing a search warrant at a residence to briefly detain *occupants* of that residence, to ensure officer safety and an orderly completion of the search." *King*, 89 Wn. App. at 618-19 (emphasis added) (citing *Summers*, 452 U.S. at 702-03, 705). This is the exception under which the State justifies the detention here.

¶18 As Ms. Smith correctly points out, however, this exception is limited in its application to occupants of the residence being searched. The State cites no authority to justify the detention of persons outside of a residence in which the search is to be conducted. And we decline to extend the holding in *Summers*.

¶19 The State relies on *State v. Galloway*, 14 Wn. App. 200, 202, 540 P.2d 444 (1975), where police detained and

frisked a person who entered the residence in which a search was being conducted. *Galloway* holds that police may conduct a limited search for weapons to protect themselves during the execution of a warrant. *Id.* Police must, however, have a reasonable suspicion that the person is armed. *Ybarra v. Illinois*, 444 U.S. 85, 92-94, 100 S. Ct. 338, 62 L. Ed. 2d 238 (1979); *accord Galloway*, 14 Wn. App. at 202.

¶20 "[W]hile an occupant may be detained during the execution of a residential search warrant, this limited exception to the probable cause requirement does not extend to those merely present on the premises." *State v. Broadnax*, 98 Wn.2d 289, 304, 654 P.2d 96 (1982), *overruled on other grounds by Minnesota v. Dickerson*, 508 U.S. 366, 113 S. Ct. 2130, 124 L. Ed. 2d 334 (1993). The court went on to explain, " '[M]ere presence' is not enough; there must be 'presence plus' to justify the detention or search of an individual, other than an occupant, at the scene of a valid execution of a search warrant." *Id.* at 301. The "plus" consists of independent factors, other than arrival at the scene, tying the person to the illegal activities being investigated or raising a reasonable suspicion that the person is armed and dangerous. *Id.* at 296, 300-01.

¶21 Detective Smith was examined concerning the threat that Ms. Smith posed:

> Q. But you had no individualized suspicion, either in terms of the evidence or when they were taken out of vehicle, that Miss Smith was -- had been involved in criminal activity or was about to commit a crime. Fairly said?
>
> A. I had no idea what she was doing there.
>
> Q. Or was armed and presently dangerous?
>
> A. I had no way of knowing whether she was armed and presently dangerous.

RP at 23.

¶22 This court has held that when a person comes into the residence in which a search is being conducted, any detention must be justified by specific and articulable facts

that create an objective, reasonable belief that the suspect is armed and dangerous and may not be based on a generalized suspicion that people present during narcotic searches are often armed. *State v. Lennon*, 94 Wn. App. 573, 580-81, 976 P.2d 121 (1999). There are no facts to show an individualized suspicion that Ms. Smith posed a threat to officer safety.[2]

¶23 The State relies on *State v. Howard*, 7 Wn. App. 668, 502 P.2d 1043 (1972), a case that predated the presence-plus requirement announced by our Supreme Court in *Broadnax*.[3] To the extent it is inconsistent with *Broadnax*, it is not binding authority.

¶24 Less intrusive action on the part of the officers could have achieved the desired result. Notably, the detective had recorded the comings and goings of other visitors and had not detained anyone else.

¶25 Because the officers had no reasonable articulable suspicion that Ms. Smith had committed or was about to commit a crime or that she was a threat to anyone's safety, the seizure violated Ms. Smith's Fourth Amendment rights. All "evidence obtained as a result of an unlawful

---

[2] Detective Smith testified that another officer had reported that Ms. Northey made "furtive movements," which was described as an effort to hide something. RP at 11. The detective testified that such movements did not raise a suspicion as to Ms. Smith that a crime was afoot or that she was armed and dangerous. Moreover, the decision to seize and detain the women was made prior to any such movements.

[3] In *Howard*, the defendant stopped his car near the door at the rear of a residence that was being searched at 10 p.m. on a warrant based on controlled drug buys. Mr. Howard was seen bending down, trying to hide something in his car. Mr. Howard was recognized by the officer as a suspected drug dealer and user, and the officer knew that Mr. Howard carried a concealed knife. The appellate court held that because the officer had a duty to ascertain that the vehicle's occupants would not interfere with the search and what business the occupants had at the address, the officer had the right to make a reasonable frisk for weapons and to inspect the interior of the vehicle with a flashlight. The court held, "A realistic appraisal of the risk to a police officer under the circumstances of this case demands this extension of the right to frisk." *Howard*, 7 Wn. App. at 675.

seizure is inadmissible." *State v. Reichenbach*, 153 Wn.2d 126, 135, 101 P.3d 80 (2004).

¶26 Reversed.

Sweeney and Korsmo, JJ., concur.