

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 37212-0-III |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| J.Y.A.-V.,[†] | ) | UNPUBLISHED OPINION |
| | ) | |
| Respondent. | ) | |

SIDDOWAY, J. — The State of Washington appeals the trial court's ruling that statements made to police by J.Y.A.-V. were not admissible in this juvenile court action against her. We affirm.

FACTS AND PROCEDURAL BACKGROUND

Then-16-year-old J.Y.A.-V. was charged in the summer of 2019 with minor in public exhibiting effects of liquor, a misdemeanor. *See* RCW 66.44.270(2)(b) and

---

[†] To protect the privacy interests of the minor, we use her initials throughout this opinion. General Order for the Court of Appeals, *In re Changes to Case Title* (Aug. 22, 2018), effective September 1, 2018.

66.44.180.[1]  The charge was based on observations made and information obtained by Officer Nathaniel Porter after he was dispatched at around 2:00 a.m. to a residential area in Sunnyside, where Ms. A.-V. was standing in the road next to a pickup truck, and was yelling at a man seated in the driver's seat.  Officer Porter turned on his emergency lights before stepping out of his patrol car and approaching the two.  According to the State's briefing below, when Officer Porter approached them, they stopped arguing.  He spoke with both of them.  He then observed signs the female was intoxicated.  In response to the officer's questions, Ms. A.-V. told him that she was babysitting her brother's children at the adjacent residence and provided her date of birth and the names of her parents.  Officer Porter did not arrest Ms. A.-V.; instead, he released her to her father.

A couple of weeks after this contact, Ms. A.-V. was charged with minor in public exhibiting effects of liquor.  A CrR 3.5 hearing to determine the admissibility of her statements to Officer Porter took place several months later.  Ms. A.-V. argued at the hearing that her statements were not admissible, taking the position that she was seized when Officer Porter activated his emergency lights and that the officer lacked reasonable suspicion of criminal activity at that time,

---

[1] Ms. A.-V. had turned 16 by the time of the charge; the offense conduct took place when she was 15.

Officer Porter was the only witness at the CrR 3.5 hearing. He was asked several times during direct and cross-examination what information he received before arriving at the location where Ms. A.-V. was standing in the roadway. He testified that

- he believed he was dispatched to the location for a "possible domestic," and that "a male and a female [were] arguing in the street," Report of Proceedings (RP) at 10;

- later, he testified that rather than a "domestic," he "believe[d] the comments were a male and a female arguing," RP at 15;

- a copy of the CAD[2] log was provided to refresh his recollection; after reviewing it, he agreed it said "there was . . . a female outside arguing," with no mention of a male or a "domestic," and testified that he didn't recall whether there was mention in the dispatch call of a "domestic" or a male and would "have to listen to the dispatch recordings," RP at 16;

- typically, if it is known at the time that a 911 call involves domestic violence, that would be indicated in the dispatch;

- the CAD log indicated that the 911 caller was disconnected and unable to call back;[3]

- pretty much the only information according to the CAD log was that there was a female outside arguing; and

- finally, he testified that "it came out as a suspicious circumstance was the nature of the call," but he didn't know, at the time of the suppression hearing, what he heard when dispatched. RP at 17.

Officer Porter was also asked at several points during his testimony what he saw upon arrival, before activating his emergency lights and approaching Ms. A.-V. He testified that

---

[2] Computer aided dispatch.

[3] A motion in limine filed by the State on the day of the CrR 3.5 hearing stated that the 911 caller had "wished to remain anonymous." Clerk's Papers at 2.

3

- he saw what he believed was a Chevrolet pickup truck in the middle of the street that was occupied by a male, who seemed to be arguing with a female standing next to the truck;

- the female was "in the middle of the roadway blocking traffic," RP at 13;

- the male was in the driver's seat of the pickup truck that was "double-parked in the middle of the street," RP at 18, and "the female, the defendant, was standing in the southbound lane . . . next to the driver's door," *id.*; and

- asked whether there was any other traffic in the street when he approached Ms. A.-V., he answered, "Not at the time, no." RP at 22.

Officer Porter also testified to his contact with Ms. A.-V. thereafter. Among other matters, he testified that Ms. A.-V. "was uneasy on her feet" and "kept repeating that she needed to find her shoes, or her shoe." RP at 11. He testified that he asked Ms. A.-V. to step out of the roadway. There was no sidewalk, so he asked her to wait on the front lawn of the residence. He testified that he did not tell Ms. A.-V. she was being detained but she was not free to leave and he would not have allowed her to leave.

After Officer Porter was excused as a witness, the prosecutor argued that the officer's questioning of Ms. A.-V. took place during a valid *Terry*[4] stop. The trial court questioned the prosecutor about the crime Officer Porter was investigating when he arrived and activated his emergency lights. When the prosecutor responded that "he could have been investigating disorderly conduct," the court asked, "Yes, but what *is* he investigating?" RP at 32-33 (emphasis added). The prosecutor replied, "He was investigating a noise complaint. There was a woman yelling." *Id.*

---

[4] *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

4

The prosecutor's argument later returned to disorderly conduct, which she argued can be committed by blocking a lane of traffic. She cited RCW 9A.84.030(1)(c), which provides that a person is guilty of disorderly conduct if "the person . . . [i]ntentionally obstructs vehicular or pedestrian traffic without lawful authority." The prosecutor acknowledged that Officer Porter did not testify to suspecting Ms. A.-V. of being engaged in that crime at the time he activated his emergency lights and approached her. The prosecutor argued, however, that an officer does not have to have reasonable suspicion "of [a] particular crime" but only of conduct "that could turn into . . . a plethora of different criminal activities." RP at 38.

At the conclusion of the hearing, the trial court agreed with Ms. A.-V.'s contention that she was seized when Officer Porter activated his emergency lights and that the officer lacked reasonable suspicion at that time that she was engaged in criminal activity. In light of the court's ruling, the prosecutor asked the court to enter an order terminating the case under RAP 2.2(b)(2) on the basis that its ruling had the practical effect of terminating the case. The trial court did, the State appealed, and the trial court thereafter entered findings of fact and conclusions of law supporting its ruling.

## ANALYSIS

In general, warrantless seizures are per se unconstitutional, and the burden falls on the State to demonstrate that a warrantless seizure falls into a narrow exception to the rule. *State v. Carriero*, 8 Wn. App. 2d 641, 662-63, 439 P.3d 679 (2019) (citing *State v.*

*Doughty*, 170 Wn.2d 57, 61, 239 P.3d 573 (2010)). Exceptions are "'jealously and carefully drawn.'" *Doughty*, 170 Wn.2d at 61 (quoting *State v. Williams*, 102 Wn.2d 733, 736, 689 P.2d 1065 (1984)). A brief investigatory seizure, or *Terry* stop, is one such exception. *State v. Fuentes*, 183 Wn.2d 149, 158, 352 P.3d 152 (2015). Under this exception, a police officer may, without a warrant, briefly detain an individual for questioning if the officer has reasonable and articulable suspicion that the person is or is about to be engaged in criminal activity. *Id.*; *State v. Smith*, 145 Wn. App. 268, 277, 187 P.3d 768 (2008).

The inability of a police officer to articulate the exact crime being committed does not preclude an investigative stop. For instance, in *State v. Villarreal*, 97 Wn. App. 636, 640, 984 P.2d 1064 (1999), the defendant was detained after an officer witnessed him urinating in public, which the State later demonstrated could violate a city ordinance and constitute a public nuisance. In *State v. Mercer*, 45 Wn. App. 769, 771, 775, 727 P.2d 676 (1986), two young men were detained after an officer passing an elementary school at 3:30 a.m. saw the two of them and a companion seated in a car whose dome light flashed on and off; when the officer's marked patrol car entered the parking lot, their companion fled and the two stepped out of the car—facts that the court stated "do not comport with innocent activity." For the suspicion to be reasonable, the circumstances must be more consistent with criminal than innocent conduct. *Id.* at 774.

No. 37212-0-III
*State v. J.Y.A.-V.*

In challenging the trial court's ruling that Ms. A.-V.'s statements were inadmissible, the State assigns error to all or portions of the trial court's findings of fact 3.2 and 3.10, and what it contends is a factual component of the court's conclusion of law 4.4. On that basis, it assigns error to its conclusion of law 4.5 that Ms. A.-V.'s statements were not admissible.

We review challenged factual findings from a CrR 3.5 hearing for substantial evidence. *State v. Broadaway*, 133 Wn.2d 118, 131, 942 P.2d 363 (1997)). "Substantial evidence exists where there is a sufficient quantity of evidence in the record to persuade a fair-minded, rational person of the truth of the finding." *State v. Hill*, 123 Wn.2d 641, 644, 870 P.2d 313 (1994). We determine de novo whether the trial court derived proper conclusions of law from its findings of fact. *State v. Solomon*, 114 Wn. App. 781, 789, 60 P.3d 1215 (2002).

We first address Ms. A.-V.'s challenges to two findings and the language from conclusion 4.4 that the State characterizes as a finding. We then turn to the challenge to conclusion of law 4.5.

I.    THE CHALLENGED FINDINGS OF FACT ARE SUPPORTED BY SUBSTANTIAL EVIDENCE, WITH THE EXCEPTION OF THE IMMATERIAL OVERBREADTH OF FINDING 3.10

Finding 3.2 states:

*Officer Porter testified that on July 20, 2019 at approximately 1:57 a.m. he was dispatched to the intersection of North Avenue and N. 13th St. in Sunnyside, WA in response to a report of a woman arguing in the street.*

7

Clerk's Papers (CP) at 18 (emphasis added).  The State contends the finding is not supported by substantial evidence because Officer Porter originally testified he was responding to something more: to a "'possible domestic'" and "'a male and a female arguing.'"  Br. of Appellant at 9 (quoting RP at 10).  The State acknowledges that when presented with the CAD log, Officer Porter admitted it reflected something different but explained that what is dispatched and what is logged in the CAD log is not always the same.

The State ignores, however, that when presented with the CAD log, Officer Porter retreated from his testimony that the dispatch had made reference to a "domestic."  He testified he couldn't recall whether there was mention of a male, and didn't know, at the time of the suppression hearing, *what* he heard.  The trial court could reasonably find that the only information provided to Officer Porter that was established in the CrR 3.5 hearing was that a woman was arguing in the street.

Finding 3.10 states:

> *There was no testimony about any other vehicles traveling on the street during the time of Officer Porter's contact with the respondent.*

CP at 19 (emphasis added).  The State argues that this finding is in error for two reasons: first, because Officer Porter stated during his testimony that Ms. A.-V. was "in the middle of the roadway blocking traffic when I arrived on scene," RP at 13; second, because the

8

officer stated, when asked if there was other traffic in the street when he approached Ms. A.-V., that there was no other traffic at that time.

It is not clear whether Officer Porter meant by his first statement that traffic *was* present and *was* being blocked because Ms. A.-V. was in the roadway, or that he meant only that she was standing in the southbound lane and would have blocked traffic had there been any. The context does not shed light on which of these two meanings is more reasonable. The officer made the statement in response to a question that had nothing to do with whether there was any traffic on the residential street during his early morning contact with Ms. A.-V. *See* RP at 13 ("Was she free to leave?").

It appears from argument at the CrR 3.5 hearing that the trial court understood Officer Porter to mean only that Ms. A.-V.'s position would have blocked traffic had there been any. This appears to have been the prosecutor's understanding as well. After the prosecutor argued that Officer Porter arrived to see Ms. A.-V. "in the road . . . with one shoe on," the following exchange occurred:

> THE COURT: Where's the crime in that?
>
> [PROSECUTOR]: —she's blocking a lane of travel. You know, the officer—
>
> THE COURT: *It was 1:00 in the morning and there was no people. She wasn't blocking anything. She wasn't blocking any travel.*
>
> [PROSECUTOR]: She was blocking his lane, his road. He couldn't get the patrol car through that.
>
> THE COURT: *Is that what he testified to?*
>
> [PROSECUTOR]: *No, he did not.*

9

RP at 40 (emphasis added).

At the hearing at which the trial court reviewed the parties' proposed findings and conclusions, the court and the prosecutor again revealed a shared understanding that there was no traffic to block other than responding police officers. Asked by the trial court, "Do you recall [Officer Porter] ever testifying that there were other vehicles present at any time?," the prosecutor answered only, "[H]e testified that she was blocking his patrol vehicle." RP at 68-69. (Defense counsel disagreed, stating "I believe you said that; but he never said that." RP at 69.). The trial court could reasonably find that Officer Porter's statement about Ms. A.-V. "blocking traffic" did not establish that there were vehicles traveling on the street during their contact.

As for the second statement, we agree that Officer Porter's testimony that there was no traffic on the street was "testimony *about* . . . other vehicles traveling on the street." CP at 19. The finding is therefore overbroad. But it is correct insofar as it conveys that "[t]here was no testimony that other vehicles were traveling on the street during the contact," which is the relevant content of the finding. *Id*.

Conclusion of law 4.4 includes the following statement that is challenged as a factual finding:

> *At the time of the seizure of the respondent, the only information Officer Porter possessed is that an unidentified caller said there was a female outside arguing, shortly after 2:00 am he observed a female standing in the roadway arguing with a man in a pickup truck whose vehicle was stopped in that roadway.*

CP at 21 (emphasis added). The State's challenge to the factual component of this conclusion reiterates its challenges to findings 3.2 and 3.10. We reject those challenges to the extent and for the reasons explained above.

The State also argues that "the pickup truck was not just stopped in the roadway, it was double-parked and blocking the roadway." Br. of Appellant at 11. That additional information, while relevant to the conduct of the male seated in the truck's driver's seat, did not support a reasonable suspicion of criminal activity by Ms. A.-V. Reasonably read, the statement in the conclusion is only summarizing "information . . . possessed" that could support "the seizure of the respondent." CP at 21.

To the extent relevant to the trial court's ruling on admissibility, the challenged findings of fact are supported by the evidence.

II.    THE FINDINGS OF FACT SUPPORT THE TRIAL COURT'S CONCLUSIONS OF LAW

The State challenges the trial court's conclusion of law 4.5 that "[b]ecause the respondent was unlawfully seized, any information or evidence acquired or received by Officer Porter following the respondent's unlawful seizure is not admissible." CP at 21. It contends the officer could reasonably suspect Ms. A.-V. of committing two crimes and one traffic infraction: disorderly conduct, public nuisance, and pedestrian on roadway, respectively. At oral argument, the State offered "pedestrian on the roadway" as the strongest basis for reasonable suspicion. Wash. Ct. of Appeals oral argument, *State v.*

*J.Y.A.-V.*, No. 37212-0-III (Jun. 8, 2021), at 3 min., 17 sec. through 3 min., 35 sec. (on file with court).

Public nuisance was not identified in the State's brief, or at the CrR 3.5 hearing, or in the several presentment hearings, as a basis for reasonable suspicion. We will not consider an argument for the first time on appeal that it provided a basis for a *Terry* stop. RAP 2.5(a).

We will address the State's arguments that the *Terry* stop was supported by a reasonable suspicion of "pedestrian on the roadway" or disorderly conduct, since the State advanced those contentions in its briefing or argument in the CrR 3.5 hearing.

*Pedestrian on the roadway.* RCW 46.61.250(2)[5] provides in relevant part that

> [w]here sidewalks are not provided, any pedestrian walking or otherwise moving along and upon a highway . . . shall, when practicable, walk or move only on the left side of the roadway or its shoulder facing traffic which may approach from the opposite direction and upon meeting an oncoming vehicle shall move clear of the roadway.

Under RCW 46.63.020, failure to perform any act required by Title 46 RCW, or performing an act prohibited by the title, is designated as a traffic infraction.

Officer Porter testified that he did not believe there was a sidewalk along the roadway where he encountered Ms. A.-V. He testified that she was standing next to the pickup truck, not that she was walking or otherwise moving along and upon a highway.

---

[5] A slightly different version of the statute was in effect at the time of the stop, but the changes involve sidewalk accessibility, which is not pertinent here.

A different rule of the road applies to pedestrians crossing a roadway at points other than marked crosswalks or an unmarked crosswalk at an intersection; they are to "yield the right-of-way to all vehicles upon the roadway." RCW 46.61.240. And case law holds that persons "'stand[ing] upon the highway'" are only under a duty to exercise reasonable care for their own safety. *Stewart v. State*, 92 Wn.2d 285, 292, 597 P.2d 101 (1979) (citing *See v. Willett*, 58 Wn.2d 39, 44, 360 P.2d 592 (1961)); *Bradley v. Maurer*, 17 Wn. App. 24, 31, 560 P.2d 719 (1977) (citing *See*, 58 Wn.2d at 44). There was no other traffic, and Officer Porter did not testify to facts supporting a reasonable suspicion, at the time of the seizure, that Ms. A.-V. was not exercising reasonable care for her own safety.

At oral argument of the appeal, the State took the position that Officer Porter could reasonably expect that Ms. A.-V. would have to move at some point. Wash. Ct. Appeals oral argument, *supra*, at 3 min., 50 sec. through 5 min., 3 sec. But her movement could well have been a permitted movement: either crossing the roadway to her brother's home or walking along the left side of the roadway. There was no evidence to support a reasonable suspicion that Ms. A.-V. was about to start walking down the prohibited right side of the roadway.

*Disorderly conduct.* "A person is guilty of disorderly conduct if the person . . . [i]ntentionally obstructs vehicular or pedestrian traffic without lawful authority." RCW

13

9A.84.030(c). Nothing in the court's findings (or in the record) suggests that Officer Porter had reason to believe that Ms. A.-V. was intentionally obstructing traffic.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, J.

WE CONCUR:

_____
Pennell, C.J.

_____
Fearing, J.