# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 50919-9-II |
| Respondent, | |
| v. | |
| CLARISSA ALISHA LOPEZ, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, A.C.J. — Following a bench trial on stipulated facts, the trial court found Clarissa A. Lopez guilty of one count of possession of a controlled substance, two counts of possession of a controlled substance with intent to deliver, and one count of bail jumping. Her possession conviction and one of her possession with intent to deliver convictions transpired from events on June 30, 2016. Lopez argues the methamphetamine and paraphernalia that forms the basis of the two 2016 offenses should have been suppressed because it was discovered as the fruit of an unlawful seizure and she did not voluntarily consent to search the bags where the items were located. In the alternative, Lopez argues her possession of a controlled substance conviction should be dismissed based on double jeopardy principles. She also argues the sentencing court erred in imposing certain legal financial obligations (LFOs). We affirm Lopez's convictions but remand to the trial court for application of the 2018 legislative amendments to the LFO statutes consistent with *State v. Ramirez*, 191 Wn.2d 732, 426 P.3d 714 (2018).

FACTS

On June 30, 2016, Chehalis Police Officer Robin Holt was at a mobile home executing a search warrant for narcotics. The mobile home was associated with Ian Angelo. Lewis County Joint Narcotics Enforcement Team Detective Adam Haggerty testified that law enforcement were aware that Lopez and Angelo shared a bedroom inside the mobile home. He also testified that law enforcement's objective was to "roll [Lopez and Angelo] or have them cooperate with law enforcement. [Law enforcement] had a good idea on who they were being supplied by, who they were dealing with, so that was [aw enforcement's] intention." Verbatim Report of Proceedings (VRP) (June 27, 2017) at 38.

While Holt was outside the mobile home, Lopez arrived in a vehicle as a passenger. Holt testified the vehicle came to a stop outside the mobile home. Holt approached the driver, at which point Lopez "got out of the vehicle" on the passenger side. VRP (June 27, 2017) at 26. Centralia Police Detective Chad Withrow and Lewis County Sheriff's Office Detective Mathew Schlecht approached Lopez as she exited the vehicle. Schlecht testified that he first observed the vehicle pull up and park in front of the mobile home and then observed Lopez get out of the vehicle. Schlecht did not hear anyone order Lopez out of the vehicle. He further testified that no one yelled at Lopez and none of the officers had their guns drawn.

When Lopez exited the vehicle, she was holding a purse. Schlecht asked Lopez for consent to search the purse, which Lopez granted. Inside the purse was a locked bank bag, which Lopez did not consent to be searched. Schlecht advised Lopez of her *Miranda*[1] rights. Withrow could

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

not remember touching the bank bag and could only remember Schlecht holding the bank bag. Withrow did not observe Schlecht "manipulate it in any way." RP (June 27, 2017) at 78.

Law enforcement inquired whether Lopez and Angelo were willing to be confidential informants for their narcotics task force. The parties went inside the mobile home to discuss the matter. Lopez and Angelo agreed to be confidential informants. Lopez then gave Schlecht the key to open the bank bag located inside her purse. He found methamphetamine inside the bank bag. Law enforcement also found "a pipe" in the bank bag located inside her purse. VRP (June 27, 2017) at 70.

Lopez admitted she had another bank bag inside the bedroom. Lopez provided the key to open the second bank bag, and officers located 100 grams of methamphetamine, a spoon, a digital scale, and several plastic baggies.

Ultimately, the confidential informant agreement did not work out due to Lopez's non-compliance. The State charged Lopez with possession of a controlled substance, methamphetamine; and possession of a controlled substance, methamphetamine, with intent to deliver for the June 30, 2016 incident. Lopez missed a court hearing and, on April 6, 2017, she was involved in another incident involving methamphetamine. The State additionally charged Lopez with bail jumping and another count of possession of a controlled substance, methamphetamine, with intent to deliver for the April 6, 2017 incident.

Lopez filed a CrR 3.6 motion to suppress the methamphetamine found inside the two bank bags. She argued that Holt wrongly stopped the vehicle that she was a passenger in and that she did not voluntarily give her consent to search the bank bag inside her purse or the bank bag inside

the mobile home. Lopez testified, contrary to Holt and Schlecht, that Holt stopped the vehicle by waving it forward and that he ordered her out of the vehicle. Lopez also testified that Withrow, while searching her purse, manipulated the bank bag and told her he knew what was inside, and if she did not allow him to search the contents of the bank bag, Lopez would be charged with whatever was inside the bag.

The trial court denied Lopez's motion to suppress. The trial court entered findings of fact and conclusions of law. Specifically, the trial court found in relevant part:

> 1.3 The vehicle was waived [sic] forward by Detective Robin Holt and voluntarily parked in a spot near the trailer.
>
> 1.4 Lopez had voluntarily gotten out of the vehicle while Det. Holt was contacting the driver.
>
> 1.5 Detective Chad Withrow and Detective Mathew Schlecht contacted Lopez after she had exited the vehicle.
>
> . . . .
>
> 1.7 After being contacted, Lopez granted consent to search her purse.

Clerk's Papers (CP) at 54-55. The trial court then concluded:

> 2.1 The vehicle Lopez was riding in was not seized by Det. Holt when he waived [sic] them forward.
>
> 2.2 Lopez's consent to the search of her purse and the contents inside the purse was constitutionally valid.

CP at 56.

Lopez waived her right to a jury trial and proceeded with a stipulated facts bench trial. The trial court found Lopez guilty as charged.

4

At sentencing, Lopez argued the June 30, 2016 possession and possession with intent to deliver convictions may violate double jeopardy principles, but acknowledged that after further research, there "doesn't appear there's much in the way of case law on that" since "she has one bank bag in the vehicle and then one bank bag in the house." VRP (September 25, 2017) at 14-15. Counsel acquiesced that case law was "definitely in [the State's] favor." VRP (September 25, 2017) at 16. The sentencing court agreed and concluded that the two offense did not violate double jeopardy.

The sentencing court asked Lopez about her past work history. Lopez responded, "I've worked at Kohlers. I was a manager at McDonald's for a few years. And I've worked at two tree farms." VRP (September 25, 2017) at 19. At the time of sentencing, Lopez only had herself to support but informed the sentencing court that she was pregnant. Lopez claimed to have approximately $30,000 in debt.

The sentencing court sentenced Lopez to 24 months on the possession conviction, 80 months each on the two possessions with intent to deliver convictions, and 60 months on the bail jumping conviction. The sentencing court ran all sentences concurrently for a total sentence of 80 months.

The sentencing court imposed LFOs, including a $100 deoxyribonucleic acid (DNA) collection fee, a $200 criminal filing fee, and a $700 court-appointed attorney fee. The sentencing court also entered an order of indigency, waiving the appellate filing fee and appointing appellate counsel if Lopez chose to appeal.

Lopez appeals.

ANALYSIS

A.    SEIZURE CHALLENGE

1.    Challenged Findings of Fact and Conclusions of Law

Assigning error to findings of fact 1.3, 1.4, and 1.5 and conclusion of law 2.1, Lopez contends the methamphetamine and paraphernalia located inside both bank bags should have been suppressed because there was no reasonable suspicion to justify her seizure under the federal and state constitutions. We disagree.

a.    Standard of review

We review a trial court's decision on a CrR 3.6 motion to suppress to determine whether the court's findings are supported by substantial evidence. *State v. Schultz*, 170 Wn.2d 746, 753, 248 P.3d 484 (2011) Substantial evidence supports a finding of fact when there is a sufficient quantity of evidence in the record to persuade a fair-minded, rational person of the truth of the finding. *Id.* Unchallenged findings of fact are verities on appeal. *State v. Luther*, 157 Wn.2d 63, 78, 134 P.3d 205, *cert denied*, 549 U.S. 978 (2006). We also review whether the findings of fact support the conclusions of law de novo. *State v. Russell*, 180 Wn.2d 860, 866, 330 P.3d 151 (2014). Credibility determinations are for the trier of fact and we do not review them on appeal. *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

b.    Legal principles

Both the Fourth Amendment to the United States Constitution and article I, section 7 of the Washington Constitution prohibit warrantless searches and seizures unless an exception to the warrant requirement applies. *State v. Garvin*, 166 Wn.2d 242, 249, 207 P.3d 1266 (2009). The

exclusionary rule requires suppression of all evidence obtained pursuant to a person's unlawful seizure. *State v. Winterstein*, 167 Wn.2d 620, 632, 220 P.3d 1226 (2009).

"'Not every encounter between an officer and an individual amounts to a seizure.'" *State v. Armenta*, 134 Wn.2d 1, 10, 948 P.2d 1280 (1997) (quoting *State v. Aranguren*, 42 Wn. App. 452, 455, 711 P.2d 1096 (1985)). A seizure occurs if, "'in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.'" *State v. Mecham*, 186 Wn.2d 128, 137, 380 P.3d 414 (2016) (quoting *State v. Young*, 135 Wn.2d 498, 510, 957 P.2d 681 (1998)). An officer who merely asks questions "does not necessarily elevate a consensual encounter into a seizure." *State v. Barnes*, 96 Wn. App. 217, 222, 978 P.2d 1131 (1999).

Regarding individuals who arrive at a residence while officers are executing a search warrant, our Supreme Court has articulated a "presence-plus requirement" to detain the individual. *State v. Smith*, 145 Wn. App. 268, 277, 187 P.3d 768 (2008) (citing *State v. Broadnax*, 98 Wn.2d 289, 304, 654 P.2d 96 (1982), *overruled on other grounds by Minnesota v. Dickerson*, 508 U.S. 366, 113 S. Ct. 2130, 124 L. Ed. 2d 334 (1993)). A seizure is not justified based merely on the individual's presence; rather, there must be an additional independent factor. *Broadnax*, 98 Wn.2d at 304. The court explained, "'[M]ere presence' is not enough; there must be 'presence plus' to justify the detention or search of an individual, other than an occupant, at the scene of a valid execution of a search warrant." *Id*. at 301. The "plus" consists of independent factors, other than arrival at the scene, tying the person to the illegal activities being investigated. *Id.* at 296, 300-01.

c.      Findings of Fact 1.3, 1.4, and 1.5.

Here, Lopez arrived at the mobile home while officers were executing a search warrant. Holt testified the vehicle came to a stop outside the mobile home. Holt approached the driver, at which point Lopez "got out of the vehicle" on the passenger side. VRP (June 27, 2017) at 26. Withrow and Schlecht approached Lopez as she exited the vehicle. Schlecht testified that he first observed the vehicle pull up and park in front of the mobile home and then observed Lopez get out of the vehicle. Schlecht did not hear anyone order Lopez out of the vehicle. He further testified that no one yelled at Lopez and none of the officers had their guns drawn.[2] Lopez testified, contrary to Holt and Schlecht, that Holt stopped the vehicle by waving it forward and that he ordered her out of the vehicle.

Based on Holt's, Withrow's, and Schlecht's testimony, substantial evidence supports the trial court's findings that the vehicle voluntarily stopped near the mobile home and Lopez voluntarily got out of the vehicle. While Lopez testified contrary to the officers, we leave credibility determinations to the trier of fact and do not review them on appeal. *Camarillo*, 115

---

[2] Lopez further alleges that Schlecht testified that she was detained and Withrow testified she was seized. During cross-examination, defense counsel asked Withrow, "both [the driver] and [Lopez] had been seized, would that be correct[?]" VRP (June 27, 2017) at 47. Withrow responded, "I don't believe that [the driver] was, or the other female." VRP (June 27, 2017) at 47. Withrow continued "we asked [Lopez] to come over to our location, yes." VRP (June 27, 2017) at 47. Also during cross-examination, defense counsel asked Schlecht if both the driver and Lopez were detained. Schlecht asked for clarification, "[when] the time the vehicle stopped in front of the house?" VRP (June 27, 2017) at 56. Defense counsel answered yes. Schlecht then stated, "We spoke with the driver. She was eventually released. And we were conducting a search warrant *and then eventually* Ms. Lopez . . . was detained." VRP (June 27, 2017) at 56-57 (emphasis added). Lopez misconstrues Schlecht and Withrow's testimony. Moreover, regardless of their testimony, substantial evidence still supports the challenged findings of fact.

Wn.2d at 71. Regarding the trial court's finding that Withrow and Schlecht contacted Lopez after she exited the vehicle, Lopez fails to provide argument supporting her challenge; we, therefore, treat that finding of fact as a verity on appeal. *Luther*, 157 Wn.2d at 78.

          d.      Conclusion of Law 2.1

The findings of fact show that the vehicle voluntarily stopped near the mobile home. Therefore, the findings support conclusion of law 2.1 that the vehicle was not seized when Holt waived the vehicle forward.

        2.      No Unlawful Seizure of Lopez

Moreover, even if Lopez was seized, it would be justified under *Broadnax,* 98 Wn.2d at 301. The officers were executing a search warrant in a mobile home where the officer's knew Lopez shared a room with Angelo, and the officers knew Lopez and Angelo were involved in selling methamphetamine. This meets the "presence-plus requirement." *Smith*, 145 Wn. App. at 277.[3] Thus, even if Lopez was seized, any seizure was justified.

---

[3] Also, the seizure would be valid under *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). A brief investigatory seizure, known as a *Terry* stop, is an exception to the warrant requirement. *State v. Doughty*, 170 Wn.2d 57, 61-62, 239 P.3d 573 (2010). Such a stop is justified when an officer has a reasonable suspicion that the detained person was, or was about to be, involved in a crime. *State v. Z.U.E.*, 183 Wn.2d 610, 617, 352 P.3d 796 (2015). Lopez's arrival at the mobile home where officers were executing a search warrant in conjunction with the officers' knowledge that she shared a room with Angelo inside the mobile home and that both were involved in selling methamphetamine justified a *Terry* Stop. *Broadnax*, 98 Wn.2d at 301.

B.      CONSENT TO SEARCH

Assigning error to finding of fact 1.7 and conclusion of law 2.2, Lopez next contends the warrantless search of her purse was unconstitutional under our state constitution. We disagree.

1.      Legal Principles

Warrantless searches are per se unreasonable and violate article I, section 7 of the Washington Constitution. *State v. Byrd*, 178 Wn.2d 611, 616, 310 P.3d 793 (2013). One exception to the warrant requirement is when an officer has obtained a valid consent to search. *State v. Cantrell*, 124 Wn.2d 183, 187, 875 P.2d 1208 (1994). However, even a voluntary consent may be vitiated by an unlawful detention. *State v. Armenta*, 134 Wn.2d 1, 17-18, 948 P.2d 1280 (1997).

2.      Consent Valid

Lopez acknowledges she consented to the search of her purse, but contends her consent, which ultimately lead to the search of the bank bag, was tainted by an illegal seizure. But, for the reasons discussed above, Lopez was not illegally seized.

Lopez also contends her consent was tainted because officers threatened her with obtaining a search warrant after manipulating the bank bag inside her purse and they repeatedly requested to search the bank bag. The record shows that Schlecht asked Lopez for consent to search the purse, which she granted. Inside was a bank bag. Withrow could not remember touching the bank bag and could only remember Schlecht holding the bank bag. Withrow did not observe Schlecht "manipulate it in any way." VRP (June 27, 2017) at 78. Schlecht advised Lopez of her *Miranda* rights. And, after discussing being a confidential informant, Lopez told Withrow there was paraphernalia inside the bank bag in her purse. While Lopez testified differently, we leave

credibility determinations to the trier of fact and do not review them on appeal. *Camarillo*, 115 Wn.2d at 71.

Based on Schlecht and Withrow's testimony, substantial evidence supports the trial court's finding of fact 1.7 that Lopez granted consent to search her purse. And that finding of fact supports the trial court's conclusion of law 2.2 that Lopez's consent to the search of her purse was constitutionally valid.

Lopez does not challenge the trial court's findings that the bank bag was inside Lopez's purse; Lopez was advised of her *Miranda* warnings after she initially denied consent to search the bank bag; Lopez was not placed in handcuffs inside or outside the residence; and Lopez retrieved the keys to the bank bag. These unchallenged findings are verities on appeal. *Luther*, 157 Wn.2d at 78. These findings, along with finding of fact 1.7, support conclusion of law 2.2 that Lopez's consent to the search of the contents of the purse was constitutionally valid.

C.     DOUBLE JEOPARDY

Lopez contends that her convictions for possession of methamphetamine and possession of methamphetamine with intent to deliver, stemming from the 2016 incident, violate her state and federal rights against double jeopardy.[4] She argues that she was twice punished for the same offense. We disagree.

---

[4] In the assignment of error section of her brief, Lopez argues that these two convictions violate "due process," but in the analysis section of her brief she argues they violate double jeopardy. Br. of Appellant at 2. We review her claimed error as a double jeopardy challenge.

No. 50919-9-II

1.      Standard of Review

Whether a criminal defendant is placed in double jeopardy in a particular circumstance is a question of law. *State v. Womac*, 160 Wn.2d 643, 649, 160 P.3d 40 (2007). We review such claims de novo. *Id.*

2.      Legal Principles

The double jeopardy clause of the Fifth Amendment to the United States Constitution and article I, section 9 of the Washington Constitution provide the same protection. *State v. Kelley*, 168 Wn.2d 72, 76, 226 P.3d 773 (2010). Each provision bars multiple punishments for the same offense. *Id*.

To determine if a defendant has been punished multiple times for the same offense, the Washington Supreme Court has traditionally applied the "'same evidence'" test.[5] *State v. Calle*,

---

[5] Contrary to the dissent's assertion, the "'same evidence'" test applies in this case to determine whether Lopez has been punished multiple times for the same offense. *State v. Calle*, 125 Wn.2d 769, 777, 888 P.2d 155 (1995). The dissent relies on the "unit of prosecution" analysis to conclude that Lopez's convictions for possession of methamphetamine and possession of methamphetamine with intent to deliver violated double jeopardy. Dissent at 1. But the "unit of prosecution" analysis applies when a defendant has multiple convictions under the same statutory provision; whereas, the "same evidence" test applies when a defendant has multiple convictions under different statutory provisions. *State v. Villanueva-Gonzalez*, 180 Wn.2d 975, 980-81, 329 P.3d 78 (2014). And, while the *Villanueva-Gonzalez* court ultimately applied the unit prosecution test, it was for reasons not present here. *See Villanueva-Gonzalez*, 180 Wn.2d at 982, 86 (the court stated that the unit of prosecution test was appropriate for the particular facts of the case because other jurisdictions handled assault as a course of conduct crime and based on the rule of lenity; the court did not create a bright line rule that the unit of prosecution test applies when the two offenses are the same in law).

Here, Lopez was convicted under different statutory provisions: RCW 69.50.4013 for possession of methamphetamine and RCW 69.50.401(1) for possession of methamphetamine with intent to deliver. Therefore, applying the "unit of prosecution" analysis to determine double jeopardy in this case is misguided.

12

125 Wn.2d 769, 777, 888 P.2d 155 (1995). The same evidence test mirrors the federal "same elements" standard adopted in *Blockburger v. United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932). *State v. Adel*, 136 Wn.2d 629, 632, 965 P.2d 1072 (1998). Under the same evidence test, double jeopardy is violated if a defendant is convicted of offenses which are the same in law and in fact. *Calle*, 125 Wn.2d at 777-78. If each offense, as charged, includes elements not included in the other, or requires proof of a fact that the other does not, the offenses are different and multiple convictions can stand. *Calle*, 125 Wn.2d at 777-78. The inquiry requires a case-by-case determination. *State v. Gaworski*, 138 Wn. App. 141, 150, 156 P.3d 288 (2007) (citing *Adel*, 136 Wn.2d at 640 (Talmadge, J., concurring)).

3.     No Double Jeopardy Violation

We have already recognized that the offenses of possession of a controlled substance and possession of a controlled substance with intent to deliver are legally identical. *State v. O'Connor*, 87 Wn. App. 119, 123, 940 P.2d 675 (1997). Therefore, we must determine whether the offenses are the same in fact.

Lopez argues that the facts of her case are closer to *O'Connor* than *State v. McFadden*, 63 Wn. App. 441, 443, 820 P.2d 53 (1991), *review denied*, 119 Wn.2d 1002 (1992).

In *McFadden*, McFadden went to an apartment to sell cocaine to an informant. 63 Wn. App. at 443. Police raided the apartment and caught McFadden with 5.5 grams of cocaine. *Id*. Police then searched the van that McFadden had driven to the apartment and discovered another 83.9 grams of cocaine. *Id*. He was charged and convicted of two counts of possession with intent to deliver. *Id*. Division One of this court affirmed after applying the same evidence test and

holding that the two offenses were not the same offense because the two offenses were "not the same factually." *Id.* at 452.

Our Supreme Court revisited *McFadden* in *Adel*, 136 Wn.2d at 633. The Court instructed that the proper analysis in *McFadden* should have been the unit of prosecution test because McFadden was charged with two counts of possession with intent to deliver. *Adel*, 136 Wn.2d at 638. Nevertheless, the Court held that the two units of prosecution were satisfied. *Id*. "The two crimes were premised on the showing that McFadden had two *separate and distinct* intents to deliver drugs in his possession—one intent to sell in the present to the occupants of the apartment and one intent to sell drugs in the future." *Id* (emphasis in original).

In *O'Connor*, after stopping O'Connor's vehicle, a deputy noticed an open blue metal box on the floor. 87 Wn. App. at 121. Inside the box, the deputy saw a small plastic bag of white powder, a paper bindle, and what appeared to be a glass pipe. *Id.* The deputy later searched the box and found a bag of 1.4 grams of methamphetamine. *Id.* The deputy also searched O'Connor and found 71 grams of methamphetamine in his left sock; 1.1 grams of methamphetamine in his right, front jacket pocket; and $6,095 in his wallet and pants pockets. *Id.* at 122. The State charged O'Connor with one count of possession of a controlled substance with intent to deliver and one count of possession of a controlled substance. The trial court convicted him of both counts. On appeal, this court reversed, holding that O'Connor's convictions violated double jeopardy because the possession of drugs in his sock, his jacket pocket, and in the metal box was one transaction "'in a continuous, uninterrupted series of events.'" *Id.* at 125. Furthermore, this court noted that

"the drugs were all equally accessible to O'Connor, either on his person or within arm's reach, and were not separated by any substantial distance." *Id.*

We agree with Lopez that *McFadden* is not controlling here because Lopez was not charged with two offenses arising out of the same statutory provision. Like in *O'Connor*, Lopez was charged with possession of methamphetamine under RCW 69.50.4013 and with possession of methamphetamine with intent to deliver under RCW 69.50.401(1). However, the facts here are distinguishable from *O'Connor*.

Lopez brought a purse to the mobile home with a bank bag that contained methamphetamine and a pipe. This supported the possession of methamphetamine charge.

The search of the mobile home had already commenced before Lopez arrived on the scene with her purse. A second bank bag was located inside the mobile home in a bedroom that Lopez and Angelo shared. This bank bag contained 100 grams of methamphetamine, a spoon, a digital scale, and several plastic baggies. This supported the possession of methamphetamine with intent to deliver charge.

The act of arriving onto the scene during the execution of a search warrant with methamphetamine and a pipe in a purse and having methamphetamine along with a digital scale and plastic baggies found inside Lopez's bedroom in the mobile home during the execution of a search warrant cannot be characterized as one transaction in a continuous, uninterrupted series of events. Furthermore, at all times, the drugs comprising each conviction were not all equally accessible to Lopez, they were not all either on her person or within arm's reach, and they were separated by substantial distance. Therefore, because separate facts support each conviction,

Lopez's convictions for possession of methamphetamine and possession of methamphetamine with intent to deliver do not violate double jeopardy.

D.      LFOs

Lopez filed a supplemental brief regarding the imposition of certain LFOs in light of *Ramirez*, 191 Wn.2d 732. Lopez argues that we should strike the $100 DNA collection fee, the $200 criminal filing fee, and the $700 court-appointed attorney fee. (Supp. Br. of Appellant 1)

The legislature recently amended former RCW 43.43.7541, and as of June 7, 2018, it states, in part, "Every sentence imposed for a crime specified in RCW 43.43.754 must include a fee of one hundred dollars *unless the state has previously collected the offender's DNA as a result of a prior conviction.*" (Emphasis added). Lopez argues, and the State concedes, that the State has previously collected Lopez's DNA as a result of a prior conviction. While our record shows Lopez's prior convictions, it does not show if her DNA was previously collected. The State offers to provide this information to the sentencing court on remand. We accept the State's offer to provide the necessary information to the sentencing court and remand to the sentencing court to strike the $100 DNA collection fee if Lopez's DNA was previously collected.

Regarding the $200 criminal filing fee and the $700 court-appointed attorney fee, the State argues that the sentencing court's indigency finding was not supported by the record. Therefore, the State contends that Lopez should be required to pay both fees.

The legislature also recently amended former RCW 36.18.020(2)(h) and as of June 7, 2018, sentencing courts are prohibited from imposing a criminal filing fee on defendants who are indigent at the time of sentencing. Laws of 2018, ch. 269, § 17; *Ramirez*, 191 Wn.2d at 747.

16

Similarly, the legislature amended former RCW 10.01.160(3) "to categorically prohibit the imposition of any discretionary costs on indigent defendants" under certain circumstances. *Ramirez*, 191 Wn.2d at 739 (citing Laws of 2018, ch. 269, § 6(3)). A court-appointed attorney fee is a discretionary cost. *State v. Glover*, 4 Wn. App.2d 690, 692, 423 P.3d 290 (2018).

The State contends that while Lopez may be indigent for appointment of counsel purposes, she was not indigent to avoid paying the criminal filing fee and the court-appointed attorney fee. The State relies on RCW 10.01.160(3), which states, "The court shall not order a defendant to pay costs if the defendant at the time of sentencing is indigent *as defined in RCW 10.101.010(3) (a) through (c)*." (Emphasis added). RCW 10.101.010(3) (a) through (c) states that a person is indigent if he or she is receiving certain types of public assistance, involuntarily committed to a public mental health facility, or has an annual income of 125 percent or less of the current federally established poverty level.

The sentencing court did not have the benefit of our legislature's recent statutory amendments to clarify its indigency finding. Therefore, we remand to the sentencing court to reconsider the imposition of the $200 criminal filing fee and $700 court-appointed attorney fee consistent with the 2018 legislative amendments.

We affirm Lopez's convictions, but remand to the sentencing court to consider the $100 DNA collection fee, $200 criminal filing fee, and $700 court-appointed attorney fee in light of the 2018 legislative amendments to the LFO statutes consistent with *Ramirez*.

No. 50919-9-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, A.C.J.

I concur:

Sutton, J.

RUMBAUGH, J.P.T. [*] (concurring in part, dissenting in part) — I join the majority in their analysis and opinion that the trial court's decision on Clarissa Alisha Lopez's CrR 3.6 motion to suppress was supported by substantial evidence and is affirmed. I also agree and join the majority's opinion that Lopez's consent to the search of her purse was valid, as was the search of the bank bag located in the purse. I agree the case should be remanded back to the trial court for consideration of the legal financial obligations imposed at sentencing, in light of the Supreme Court's decision in *State v. Ramirez*, 191 Wn.2d 732, 426 P.3d 714 (2018).

Since I believe that the unlawful possession of a controlled substance conviction and the unlawful possession of a controlled substance with intent to deliver charges form, on the facts of this case, a single unit of prosecution, I respectfully dissent from the majority's opinion to the contrary.

The majority acknowledges the "same evidence" test articulated by *State v. Calle*, 125 Wn.2d 769, 777, 888 P.2d 155 (1995), which mirrored the federal "same elements" criteria adopted in *Blockburger v. United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932), has been supplanted by the "unit of prosecution" test articulated in *State v. Adel*, 136 Wn.2d 629, 633, 965 P.2d 1072 (1998). The rationale of the majority nonetheless, in my view, hews to the "same evidence" standard in its determination of the double jeopardy question this case poses to the detriment of the "unit of prosecution" test.

---

[*] Judge Stanley J. Rumbaugh is serving as a judge pro tempore for the Court of Appeals, pursuant to RCW 2.06.150.

Our case law has long held that unlawful possession of a controlled substance and unlawful possession of a controlled substance with intent to deliver are legally identical offenses. *State v. O'Connor*, 87 Wn. App. 119, 123, 940 P.2d 675 (1997). Possession with intent to deliver contains an element not found in possession—"intent to deliver." RCW 69.50.401(1). But possession does not contain an element not found in intent to deliver. Therefore, "the offenses are legally identical." *O'Connor*, 87 Wn. App. at 123. On this point, the majority and I agree.

In *O'Connor* (a pre-*Adel* case), the same search of O'Connor incident to arrest yielded 71 grams of methamphetamine in his left sock and $6,095 in cash in his pants pocket, along with 1.1 grams of methamphetamine in his jacket pocket. 87 Wn. App. at 122. Also found in a metal box on the floor of the vehicle was a small amount of white powder, later determined to be 1.4 grams of methamphetamine; a pink paper bindle; and "'what appeared to be [a] glass pipe.'" *O'Connor*, 87 Wn. App. at 121 (alteration in original). From those discoveries, the State charged both possession with intent to deliver related to the 71 grams of methamphetamine found on O'Connor's person and simple possession consequent to finding the 1.1 grams in his jacket.

Our decision provided,

> The State contends the convictions are based on different acts, asserting that the methamphetamine found in the box and on his person are factually different because they involve different quantities and locations.

*O'Connor*, 87 Wn. App. at 123-24. We held that despite the fact that some drugs were found in a tin box in the vehicle and others on O'Connor's person, it was still the same act or transaction and the double jeopardy rule was violated by convicting O'Connor of both offenses.

Additional case law supports the conclusion that double jeopardy should be determined here. In *State v. Lopez*, 79 Wn. App. 755, 760, 904 P.2d 1179 (1995), the defendant was charged with two counts of unlawful possession of a controlled substance with intent to deliver. Lopez made a controlled buy of cocaine from a police informant. When arrested in his car shortly after the controlled buy, the cocaine he had purchased was found on the floorboard of the vehicle. Search of Lopez incident to arrest yielded 14 bindles of cocaine, packaged for sale. *Lopez*, 79 Wn. App. at 759. Lopez was charged with two counts of intent to deliver based on the cocaine found in his car and cocaine located on his person. In finding a double jeopardy violation, the *Lopez* court noted,

> The State contends Mr. Lopez possessed two separate quantities of the drug, at different times and locations. This argument appears to be based in part on the fact that Mr. Lopez acquired the cocaine from more than one source and possessed the drugs in different ways. However, it is difficult to see how the source of the contraband or how it is held should have an effect on the crime of possession.

79 Wn. App. at 762.

The *Lopez* court went on with its double jeopardy analysis, as follows:

> The State also points out that Mr. Lopez possessed cocaine at different times and places. While any event can be split into increasingly smaller units "[t]he Double Jeopardy clause is not such a fragile guarantee that prosecutors can avoid its limitations by the simple expedient of dividing a single crime into a series of temporal or spatial units."

79 Wn. App. at 762 (alteration in original) (quoting *Brown v. Ohio*, 432 U.S. 161, 169, 97 S. Ct. 2221, 53 L. Ed. 2d 187 (1977)).

*Lopez* was then reviewed and criticized in *Adel* for not applying the unit of prosecution test in the double jeopardy challenge, though the court determined double jeopardy would nonetheless have been found had the unit of prosecution test been applied. 136 Wn.2d at 637-39.

Two charges were lodged against Adel for simple possession of marijuana. *Adel*, 136 Wn.2d at 631. The State attempted to justify the dual charges by asserting that during a consent search, a small amount of marijuana was located in the ash tray of Adel's car. A second small amount of marijuana was located in the convenience store owned and operated by Adel. *Adel*, 136 Wn.2d at 631. The court directed the analysis away from focus on whether the same evidence is utilized to prove different charges for purpose of a double jeopardy inquiry. Instead, "[t]he proper inquiry in this case is what 'unit of prosecution' has the Legislature intended as the punishable act under the specific criminal statute." *Adel*, 136 Wn.2d at 634 (citing *Bell v. United States*, 349 U.S. 81, 83, 75 S. Ct. 620, 99 L. Ed. 905 (1955)).

Given that both the unlawful possession of a controlled substance charge and unlawful possession of a controlled substance with intent to deliver are legally identical, the question in this case becomes what is the unit of prosecution defined by the legislature.

RCW 69.50.401(1) makes it "unlawful for any person to manufacture, deliver, or possess with intent to manufacture or deliver, a controlled substance." RCW 69.50.401(2)(b) specifies methamphetamine as a controlled substance, thus coming within the ambit of the RCW 69.50.401(1) prohibition. The specific unit of prosecution cognizable from the statutory language is "possess with intent to . . . deliver." RCW 69.50.401(1).

The *Adel* court goes on to observe, "The United States Supreme Court has been especially vigilant of overzealous prosecutors seeking multiple convictions based upon spurious distinctions between the charges." 136 Wn.2d at 635 (citing *Brown*, 432 U.S. at 169).

The majority here relies on *State v. McFadden*, 63 Wn. App. 441, 820 P.2d 53 (1991), as support for the rationale that since Lopez was in possession of methamphetamine in her purse when arriving at her residence for which the search warrant had been issued, she was in possession of a controlled substance separate and apart from the possession with intent to distribute related to the drugs found in that residence. Our Supreme Court in *Adel* specified that *McFadden* was correctly decided, but noted that the *McFadden* court utilized the wrong legal test. "In *McFadden*, the defendant went to an apartment to sell cocaine to an informant. Police raided the apartment and caught McFadden with 5.5 grams of cocaine. Police then searched the van that McFadden had driven to the apartment, and they discovered another 83.9 grams of cocaine." *Adel*, 136 Wn.2d at 637-38 (citing *McFadden*, 63 Wn. App. at 443). The *McFadden* court, in addressing McFadden's double jeopardy challenge, noted, "Here, the two offenses are not the same factually. They involve different quantities . . . and different locations." 63 Wn. App. at 452.

Here, Lopez brought the methamphetamine from elsewhere to her residence where all the drugs seized in this case were discovered. The majority relies in substantial part on the arrival of Lopez with the methamphetamine in arriving at its decision. Neither the source of the drug nor the location of its discovery, which here was in the same house as a part of the same search, is determinative in the unit of prosecution analysis. In *Adel*, the marijuana was located in defendant's vehicle and in his store. In *Lopez*, the cocaine purchased from the police informant and the cocaine

23

bindles found on Lopez's person came from different sources and were acquired at different times. Only one unit of prosecution existed in *Adel* and in *Lopez*, and I believe only a single unit of prosecution is present here when examining the elements of the crime specified in RCW 69.50.401(1).

The majority cites to *State v. Villanueva-Gonzalez*, 180 Wn.2d 975, 329 P.3d 78 (2014), to support the position that the unit of prosecution analyses is only applicable where the defendant is charged pursuant to a single statutory provision and therefore must not be utilized in this case. It is posited that where violation of different statutory provisions are charged, the "same elements" standard adopted in *Blockberger*, 284 U.S. at 304, is mandated for usage, requiring determination of whether the convictions were the same in law and fact. *Villanueva-Gonzalez*, 180 Wn.2d at 980-81. However, the *Villanueva-Gonzalez* court characterized that distinction as only generally true.

In circumstances where (as here) the offenses are the same in law, despite there being more than one statutory provision charged, the analysis reverts back to the unit of prosecution analysis. Specifically, the question becomes "what act or course of conduct the legislature has defined as the punishable act. This is the exact question that the unit of prosecution test is designed to answer. Therefore, we find it appropriate to apply the unit of prosecution test in this case." *Villanueva-Gonzalez*, 180 Wn.2d at 982.

In *Villanueva-Gonzalez*, the defendant was charged under two separate statutory provisions, as is the case here. Likewise, in *Villanueva-Gonzalez*, the offenses resulting in

conviction were the same in law, as is the case here. Our Supreme Court in *Villanueva-Gonzalez* applied the unit of prosecution test and, respectfully, it is my opinion that we must do the same.

It is my view that conviction of Lopez for unlawful possession of a controlled substance and unlawful possession of a controlled substance in this circumstance is improper prosecutorial piling on of offenses that should be a single unit of prosecution. As early as the 19th century our courts have prohibited attempts to turn a single crime into multiple crimes by "arbitrarily [dividing] up ongoing criminal conduct" into multiple charges. *Adel*, 136 Wn.2d at 635 (citing *Ex Parte Snow*, 120 U.S. 274, 282, 7 S. Ct. 556, 30 L. Ed. 658 (1887)).

For the foregoing reasons, I respectfully concur in part and dissent in part.

_____

RUMBAUGH, J.P.T.