IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 37762-8-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| RACHEL G. NEWELL, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, A.C.J. — Rachel Newell is the girlfriend of Bryan Wing, or was, in October 2019, when Mr. Wing became the immediate suspect of a residential burglary. A debit card in Mr. Wing's name was found near where a newly-purchased miter saw had been taken from a residential construction site. Sheriff's deputies secured warrants to search Mr. Wing's car and the home where he and Ms. Newell were then living. Ms. Newell was a passenger in Mr. Wing's car when it was seen not far from the home, during execution of the residential search warrant. When detained and questioned, she confessed to participating in the burglary and theft of the saw.

After being charged with crimes for that incident, and later, for a further crime identified in the course of law enforcement investigation, Ms. Newell filed motions to suppress, challenging the legality of her detention and the admissibility of its evidentiary

fruits.  With only limited exceptions, her motions were denied.  She was later found guilty in stipulated fact trials.

The fact that findings and conclusions were not entered following the bench trial could have delayed resolution of the appeal, and we remind both parties of the guidance offered in *State v. Yallup*, 3 Wn. App. 2d 546, 556-57, 416 P.3d 1250 (2018), of their duty to address a trial court's failure to enter findings and conclusions following a bench trial *prior* to briefing.  *See* discussion at 16-18, *infra.*

We reject Ms. Newell's challenge to the trial court's suppression decision but agree with her that the stipulated facts were insufficient to establish her knowing possession of stolen property.  We reverse her conviction for possession of stolen property, otherwise affirm, and remand for resentencing.

## FACTS AND PROCEDURAL BACKGROUND

The discovery that someone kicked in the door of a home being constructed for Mindy Halme and stole a miter saw, and why Bryan Wing was an immediate suspect, is detailed in this court's opinion in *State v. Wing*, No. 37311-8-III (Wash. Ct. App. July 13, 2021 (unpublished).[1]  Those facts are not disputed in this appeal.  Also not disputed is the validity of warrants obtained by Lincoln County Sheriff's Deputy Jared McLagan to arrest Mr. Wing and search his car, the home he shared with Ms. Newell, and several outbuildings on the property.

---

[1] Available at https://www.courts.wa.gov/opinions/pdf/373118_ord.pdf.

As the search warrant for the property was being executed that evening, Mr. Wing's vehicle was seen nearby and was stopped. Mr. Wing and Ms. Newell were inside. Police detained not only Mr. Wing, but also Ms. Newell.

In searching Mr. Wing's car, deputies discovered sawdust on its back seat and later found the stolen saw in the car's trunk. After the saw was found, Ms. Newell was read her *Miranda*[2] rights and agreed to speak with Deputy McLagan. She admitted to the deputy that she and Mr. Wing broke into the home being constructed for Ms. Halme in order to commit a theft and stole the miter saw while inside.

In the course of searching the Wing/Newell residence, deputies took pictures of items that might prove to be stolen. Deputy McLagan's application for the warrant had explained law enforcement's reasons for suspecting Mr. Wing and Ms. Newell of other thefts:

> While Bryan and Rachel were living [in Davenport,] they had items for sale on Facebook Market place. These items were high dollar items. Most of the items they were selling were brand new and still in the box and had never been used. Both Bryan and Rachel were for the most part unemployed. Also they were seen coming and going late at night and would travel the back roads as to avoid deputies when returning home.
>
> The Sheriff's Office had many tips that Bryan['s] and Rachel's home was full of stolen items. We were advised that they go to Spokane to both sell and steal property almost nightly. Bryan and Rachel both have a long history of arrests and convictions of burglary and theft.

Clerk's Papers (CP) at 28.

---

[2] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

3

Deputies also saw evidence during the search of the home suggesting that Ms. Newell and Mr. Wing were renting a storage unit in Spokane. A warrant was obtained to search the unit. After serving the warrant, Deputy McLagan was told by storage company staff that a unit rented by Tom Burns had recently been burglarized. Deputies showed Mr. Burns pictures of items photographed during the search of the Wing/Newell residence, and Mr. Burns identified photography lighting equipment and antique cameras as items stolen from his unit.

Ms. Newell was initially charged with second degree burglary, second degree malicious mischief, and third degree theft for the crimes allegedly committed at the Halme residence. She was charged in a second prosecution with second degree possession of stolen property—the lighting equipment and cameras belonging to Mr. Burns. She filed three motions to suppress: two in the prosecution for the crimes involving Ms. Halme's property, and one in the prosecution for possessing property stolen from Mr. Burns. Among other challenges to law enforcement's actions, she contended that deputies lacked any basis to detain her at the time they stopped Mr. Wing's car.

A total of three hearings were held on the motions, at which Deputy McLagan and Sergeant Kody Becker testified. The trial court ultimately denied her motions to suppress with limited exceptions not relevant here.[3]

On the basis of the findings, the court concluded that deputies legally stopped Mr. Wing's vehicle, Deputy McLagan had probable cause when he conducted a custodial interrogation of Ms. Newell, and her statements before the custodial interrogation were voluntary.

Ms. Newell objected to the amended findings and moved the court to reconsider. The court denied the motion. In denying the motion, however, it made the following clarifying statement about Ms. Newell's initial detention and subsequent arrest:

> There should be no question the defendant was initially seized by the officers when she was placed into the patrol car after the car she was a passenger in was stopped. As this court previously held, she was not under arrest at that time and the *temporary seizure was justified following the stop as the deputies had reasonable suspicion of criminal activity and were investigating the break in and burglary* and conducting an interview of Mr. Wing following the separation of the parties. However, she was not interrogated until after the miter saw was discovered in the trunk and the sawdust was observed in the back seat as well as the other factors this court had found. A significant amount of evidence then existed to link her as a passenger in the car to criminal activity.

CP at 105 (emphasis added).

---

[3] The court's amended findings and conclusions disavow a prior finding that had caused it, initially, to suppress Ms. Newell's confession and a pair of her shoes that was seized thereafter. The amended findings and conclusions explained that the court had misunderstood part of Deputy McLagan's testimony at the first suppression hearing.

Following this ruling, Ms. Newell waived her right to a jury trial and both prosecutions proceeded to bench trials on a single statement of stipulated facts. In entering guilty verdicts in the two cases, the trial court made no oral findings of fact or conclusions of law; it stated only that it was basing its verdict on the stipulated facts. It sentenced Ms. Newell to 50 months on the burglary charge, 18 months on the malicious mischief charge, and 18 months on the possession of stolen property charge, all to run concurrently.

Ms. Newell appeals. The day after she filed her opening brief, our Supreme Court decided *State v. Blake*, 197 Wn.2d 170, 481 P.3d 521 (2021), and Ms. Newell moved for leave to add a *Blake*-related assignment of error. The motion was granted.

ANALYSIS

In her opening and supplemental briefs, Ms. Newell makes a total of 17 assignments of error that fall within four categories: (1) challenges to the court's denial of her motion to suppress evidence obtained as a result of her alleged unlawful detention, (2) a challenge to the sufficiency of the evidence to support her conviction for possession of stolen property, (3) the trial court's failure to enter findings of fact and conclusions of law explaining its verdicts in the stipulated fact trials, and (4) a need for resentencing in light of the effect on her offender score of *Blake*.

I.      REASONABLE SUSPICION SUPPORTED MS. NEWELL'S DETENTION

Ms. Newell contends she was unlawfully detained when officers, armed with warrants that named only Mr. Wing, temporarily handcuffed her and placed her in the back seat of a patrol car. She argues that all evidence stemming from the detention should have been suppressed. In light of the trial court's ultimate explanation that her temporary seizure was justified given the deputies' reasonable suspicion of her involvement in the Halme burglary, the parties analyze whether her detention was a lawful *Terry*[4] stop.

Article I, section 7 of the Washington Constitution protects against unwarranted government intrusion into a person's private affairs. The Fourth Amendment to the United States Constitution provides similar protection, prohibiting unreasonable searches and seizures. Based on these constitutional protections, "warrantless seizures are per se unreasonable." *State v. Doughty*, 170 Wn.2d 57, 61, 239 P.3d 573 (2010).

If a search or seizure is made without a warrant, the State must show by clear and convincing evidence that the search or seizure falls into one of the "few 'jealously and carefully drawn exceptions' to the warrant requirement." *State v. Garvin*, 166 Wn.2d 242, 249-50, 207 P.3d 1266 (2009) (internal quotation marks omitted) (quoting *State v. Duncan*, 146 Wn.2d 166, 171, 43 P.3d 513 (2002)). One such exception is a *Terry* stop, which is a brief, investigatory seizure for which no warrant or probable cause is required.

_____

[4] *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

7

A *Terry* stop must be supported by "a well-founded suspicion that the defendant engaged in criminal conduct." *Doughty*, 170 Wn.2d at 62. The reviewing court must evaluate "the totality of circumstances presented to the investigating officer." *Id.*

To justify the intrusion, an officer "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry*, 392 U.S. at 21. An "inchoate and unparticularized suspicion or 'hunch,'" will not support a reasonable suspicion. *Id.* at 27. "The level of articulable suspicion necessary to support an investigative detention is 'a substantial possibility that criminal conduct has occurred or is about to occur.'" *State v. Bray*, 143 Wn. App. 148, 153, 177 P.3d 154 (2008) (quoting *State v. Kennedy*, 107 Wn.2d 1, 6, 726 P.2d 445 (1986)). Under article I, section 7, the State must also show the officer was investigating a particular crime rather "than a mere generalized suspicion that the person detained is 'up to no good.'" *State v. Z.U.E.*, 183 Wn.2d 610, 618, 352 P.3d 796 (2015).

Presented with a challenge to denial of a suppression motion, we review factual findings for substantial evidence and conclusions of law de novo. *State v. Mendez*, 137 Wn.2d 208, 214, 970 P.2d 722 (1999), *abrogated on other grounds by Brendlin v. California*, 551 U.S. 249, 127 S. Ct. 2400, 168 L. Ed. 2d 132 (2007).

At the suppression hearing, Deputy McLagan testified that at the time he stopped Mr. Wing's car, "I didn't have probable cause for Rachel Newell; I was just under reasonable suspicion with her." Report of Proceedings (RP) at 12. The trial court's

findings of fact following the suppression hearings address bases for the deputy's suspicion. The trial court found that in responding to Ms. Halme's report of a burglary on morning of Ms. Newell's detention, Deputy McLagan had observed shoe prints in the burgled home that were "multiple sizes," and the smaller ones "could have been a female's." CP at 76. It found that Deputy McLagan's fiancé was Mr. Wing's sister and that the deputy was familiar with Mr. Wing and Ms. Newell, had pulled them over multiple times, and, in his experience, the two were "'never not together.'" CP at 70. It found that Deputy McLagan was familiar with Mr. Wing's and Ms. Newell's long history of arrests for theft and burglary and was aware that Mr. Wing and Ms. Newell, although for the most part unemployed, advertised for sale on Facebook Marketplace "high-quality items with many items brand new and still in the box." CP at 71.

Ms. Newell contends on appeal that these were "innocuous facts" that could only give rise to a "hunch[ ]" insufficient to justify a *Terry* seizure. Br. of Appellant at 18. She likens her detention to that of the "mere passenger" in *State v. Butler*, 2 Wn. App. 2d 549, 411 P.3d 393 (2018). Br. of Appellant at 21.

In *Butler*, after an officer observed a pickup truck driving erratically, he pulled it over. He was told by its driver that the truck had just been struck by a car that had itself pulled over a few car lengths ahead. 2 Wn. App. 2d at 553. As the officer approached the car to speak to its driver, a passenger in the car, who turned out to be Kenneth Butler, stepped out and began jogging away. *Id.* The officer commanded Butler to stop, but he

9

did not. *Id.* The officer notified dispatch that a passenger had fled the scene, was probably wanted on warrants, and described him. Other officers located Butler and, after obtaining his name, they arrested him on an outstanding warrant. He was charged with unlawful possession of a controlled substance after methamphetamine and heroin were found on his person in a search incident to arrest. *Id.* at 554-55.

This court found that Butler was unlawfully seized because the officer who commanded him to stop "acknowledged that he did not recognize Butler. He also knew that Butler had been a passenger, rather than the driver, of the vehicle from which he had emerged. He had no reason to believe that Butler, as a passenger, had engaged in or was about to engage in any criminal activity." *Id.* at a 562. While Butler had not obeyed the officer's order to stop, "'[F]light alone may not be enough to justify a *Terry* stop.'" *Id.* (quoting *Mendez*, 137 Wn.2d at 224).

*Butler* is like this case in only one, limited, respect: Ms. Newell was a passenger rather than the driver of the car. Unlike in *Butler*, Deputy McLagan *did* recognize and know Ms. Newell—in fact, he knew a lot about her and Mr. Wing. An officer's previous contacts with a defendant may inform a reasonable suspicion. *See, e.g.*, *Bray*, 143 Wn. App. at 153 (officer's previous contacts with the defendant contributed to his reasonable suspicion that Bray was engaged in criminal prowling). Unlike in *Butler*, Deputy McLagan *could* articulate reasons why he suspected Ms. Newell of having participated in

10

crimes committed that morning at the Halme construction site. The trial court did not err in concluding that Deputy McLagan conducted a lawful *Terry* detention.

The State urges us to conclude that the basis for detention was strengthened because the deputies had a warrant to search Mr. Wing's car and, unless they controlled the scene, Ms. Newell presented a risk of impeding the search.[5] It cites, as supporting authority, *State v. Broadnax*, 98 Wn.2d 289, 654 P.2d 96 (1982), *abrogated by Minnesota v. Dickerson*, 508 U.S. 366, 113 S. Ct. 2130, 124 L. Ed. 2d 334 (1993), *State v. Myers*, 102 Wn.2d 548, 689 P.2d 38 (1984), and *State v. Smith*, 145 Wn. App. 268, 187 P.3d 768 (2008).[6]

We are not persuaded. The cases on which the State relies apply the United States Supreme Court's holding in *Michigan v. Summers*, in which the Court held that "[i]f the evidence that a citizen's *residence* is harboring contraband is sufficient to persuade a

---

[5] Arguably, this was a trial court consideration. Among its findings in denying suppression were that upon stopping Mr. Wing's car, "Ms. Newell . . . exited the vehicle at which time Deputy McLagan ordered her to go back inside the vehicle. She then walked over to a parked vehicle near the stopped vehicle and another deputy then took control of her." CP at 75. Among its conclusions of law were that during execution of the search warrant, not only did "law enforcement ha[ve] a continuing suspicion of Ms. Newell's being involved in criminal activity," but also, "[s]he was initially handcuffed for officer safety and to secure the area" while they executed the search warrant. CP at 76-77. The findings and evidence supported the conclusion that Ms. Newell was detained in part to "secure the area" but they do not support an officer safety concern.

[6] The State also relies on *State v. Galloway*, but its outcome is explained by officer safety concerns. 14 Wn. App. 200, 202, 540 P.2d 444 (1975) (the officers' concern "that their safety may be in jeopardy" was "supported by the evidence and [will] not be disturbed").

judicial officer that an invasion of the citizen's privacy is justified, it is constitutionally reasonable to require that citizen to remain while officers of the law execute a valid warrant to search his *home*." 452 U.S. 692, 704-05, 101 S. Ct. 2587, 69 L. Ed. 2d 340 (1981) (emphasis added). More recently, the Supreme Court has limited the scope of *Summers*'s exception to the Fourth Amendment warrant requirement by holding that "[o]nce an individual has left the immediate vicinity of a premises to be searched . . . detentions must be justified by some other rationale." *Bailey v. United States*, 568 U.S. 186, 202, 133 S. Ct. 1031, 185 L. Ed. 2d 19 (2013).

The holding in *Summers* was arrived at by reasonableness analysis under the Fourth Amendment. *See id.* ("Detentions incident to the execution of a search warrant are reasonable under the Fourth Amendment because the limited intrusion on personal liberty is outweighed by the special law enforcement interests at stake."). Ms. Newell challenged her detention under both the state and federal constitutions. *E.g.*, CP at 3 (moving the court to suppress statements and evidence based on a violation "of the *fourth amendment to the United States Constitution* and *Const. art. 1, § 7 of the Washington State Constitution*"). "Article I, section 7 of our state constitution grants greater protection to individual privacy rights than the Fourth Amendment." *State v. Harrington*, 167 Wn.2d 656, 663, 222 P.3d 92 (2009). "[Its] text focuses on disturbance of private affairs, which casts a wider net than the Fourth Amendment's protection against unreasonable search and seizure." *Id.*

12

The State does not provide any analysis why, in executing a warrant to search a vehicle, detaining a passenger would qualify as an exception to the Washington Constitution's warrant requirement. Analogous case law suggests it would not. In *State v. Flores*, for example, the Washington Supreme Court refused to recognize an exception to the warrant requirement that would allow officers to seize an arrestee's companion to control the scene any time they are effecting an arrest. 186 Wn.2d 506, 522, 379 P.3d 104 (2016). It held that such a seizure is only justified if officers can articulate "an objective rationale predicated specifically on safety concerns for the officers, the arrestee, his or her companions, or other citizens." *Id.*

Finally, even in the Fourth Amendment context, *Broadnax*, *Myers*, and *Smith* recognize an exception to the warrant requirement for only the temporary detention of an *occupant* in connection with the execution of a warrant to search a *residence*. *See Broadnax*, 98 Wn.2d at 291-92, 300; *Myers*, 102 Wn.2d at 549-50, 556. In *Smith*, this court even observed that the *Summers* exception did not apply, because officers seized the occupant of a car in the driveway of a residence being searched. 145 Wn. App. at 275. As this court explained, the *Summers* exception "is limited in its application to occupants of the residence being searched. The State cites no authority to justify the detention of persons outside a residence in which the search is to be conducted. And we decline to extend the holding in *Summers*." *Id.*

13

The State does not establish that controlling the scene while searching Mr. Wing's car was a lawful basis for detention. The deputies' reasonable suspicion that Ms. Newell had engaged in criminal activity was a lawful basis for the detention, however.

II. THERE WAS INSUFFICIENT EVIDENCE THAT MS. NEWELL KNEW THAT THE PHOTOGRAPHY EQUIPMENT DISCOVERED IN THE WING/NEWELL HOME WAS STOLEN

RCW 9A.56.140(1) defines possession of stolen property in part as "knowingly" receiving, retaining, possessing, concealing, or disposing of stolen property "knowing that it has been stolen." Ms. Newell contends that the stipulated facts at her bench trial provided insufficient evidence of the essential element that she knew the photography equipment in her and Mr. Wing's home was stolen.

The State bears the burden to prove each element of a crime beyond a reasonable doubt. *State v. Rich*, 184 Wn.2d 897, 903, 365 P.3d 746 (2016). To determine if the State presented sufficient evidence to support a conviction, we ask "'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (emphasis omitted) (quoting *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980) (plurality opinion)). If we determine that a defendant's conviction is not supported by sufficient evidence, the remedy required is to dismiss the conviction with prejudice. *State v. Batson*, 194 Wn. App. 326, 339, 377 P.3d 238 (2016).

14

An individual's possession of *recently stolen* property increases the likelihood that the possessor has guilty knowledge but is insufficient, standing alone, to prove he or she knew the property was stolen. *State v. Terry*, 181 Wn. App. 880, 896, 328 P.3d 932 (2014) (citing *State v. Couet*, 71 Wn.2d 773, 775, 430 P.2d 974 (1967)). Possession of recently stolen property coupled with slight corroborative evidence is sufficient to prove guilty knowledge, however. *Id.* (citing *State v. Womble*, 93 Wn. App. 599, 604, 969 P.2d 1097 (1999)). Corroborative evidence can include damage consistent with theft, such as a broken ignition, fleeing when stopped, and the absence of a plausible explanation for legitimate possession. *Id.* (citing *State v. L.A.*, 82 Wn. App. 275, 276, 918 P.2d 173 (1996); *Womble*, 93 Wn. App. at 604). It can also include improbable or conflicting explanations of how the defendant acquired the property or the presence of the defendant at the scene of the crime. *See State v. Jones*, 13 Wn. App. 2d 386, 401, 463 P.3d 738 (2020).

The stipulated facts in Ms. Newell's case establish that a bag containing lighting equipment and a box of antique cameras were seen by officers and photographed while executing the search warrant for the Wing/Newell home, that it was determined that Ms. Newell and Mr. Wing own a rental unit at a storage facility in Spokane, that the rental unit of Tom Burns at that facility had been recently burglarized, that Mr. Burns was shown photographs and identified the bag of lighting equipment and the antique cameras

15

as items stolen from his storage unit, and that they were valued at $500 and $970, respectively.

There was no stipulation that Ms. Newell *knew* the lighting equipment and antique cameras at the Wing/Newell residence were stolen, nor, she argues, were there stipulated facts from which knowledge on her part could be inferred: facts such as how, when or why the photography equipment and cameras came into her possession. The State gamely argues that the stipulated facts establish a recent burglary, and since Ms. Newell and Mr. Wing rented a storage unit at the same facility where Mr. Burns's unit was burgled, it would be an "unbelievable coincidence" if Ms. Newell and Mr. Wing came by the property honestly. Br. of Resp't at 13-14.

Without more, we disagree. The fact that Ms. Newell and Mr. Wing rent a unit at the storage facility might be how they came into contact with *someone else* who burgled Mr. Burns's unit, and who was offering the photography equipment for sale. The storage unit connection is insufficient to prove beyond a reasonable doubt that Ms. Newell knew the equipment was stolen. The conviction must be reversed and the charge dismissed with prejudice.

III.  THE TRIAL COURT'S FAILURE TO ENTER FINDINGS AND CONCLUSIONS IS HARMLESS IN THIS CASE

Ms. Newell next contends the trial court failed to enter written findings of fact and conclusions of law explaining its verdicts at the stipulated fact trials, as required by CrR

16

6.1(d). The trial court merely announced verdicts of "guilty" for the two cases. No objection was made to the failure to enter more extensive findings or conclusions.

CrR 6.1(d) requires the trial court, following a bench trial, to "enter findings of fact and conclusions of law," and to "separately state[ ]" the findings and conclusions. Since the trial court's findings and conclusions comprise the record reviewable on appeal, the Washington Supreme Court has construed the rule as requiring more: "[e]ach element must be addressed separately, setting out the factual basis for each conclusion of law." *State v. Banks*, 149 Wn.2d 38, 43, 65 P.3d 1198 (2003). The court must also specifically state that each element has been met. *Id.*

This court has previously observed that to file appellate briefing about a trial court's failure to enter findings and conclusions following a bench trial usually "serve[s] no one." *Yallup*, 3 Wn. App. 2d at 556-57. The oversight should be addressed and findings and conclusions entered *before* briefs are filed. *Yallup* describes a process consistent with civility and professionalism for getting this accomplished. *See id*. Here, the parties agree the trial court erred in failing to enter written findings and agree to a remand for that purpose. But the problem should have been corrected before briefing.[7]

---

[7] Ms. Newell's counsel indicates in the opening brief that he e-mailed the prosecutors nine days before filing the brief and received no response. To obtain a timely resolution of the finding issue, which is in the interest of both parties and the court, *Yallup* identifies further steps that can be taken.

Our Supreme Court has held that a failure to comply with CrR 6.1(d) is subject to harmless error analysis, however. *Banks*, 149 Wn.2d at 44. Fortunately the error was harmless here. It is harmless with respect to the challenge to Ms. Newell's alleged unlawful seizure, because for that issue the relevant findings and conclusions were those from the suppression hearings, which were entered. It is harmless with respect to the evidence sufficiency challenge to the possession of stolen property charge, because there were stipulated facts we can review for sufficiency. Remand is unnecessary.

IV. RESENTENCING IS REQUIRED IN LIGHT OF *BLAKE*'S EFFECT ON MS. NEWELL'S OFFENDER SCORE

Finally, Ms. Newell contends that resentencing is required where her offender score was calculated by including three convictions for possession of a controlled substance.

After Ms. Newell's September 2020 sentencing, the Washington Supreme Court decided *Blake*, in which it held that former RCW 69.50.4013 (2017), which criminalized even unintentional and unknowing possession of a controlled substance, violated state and federal due process clauses, and was therefore unconstitutional. 197 Wn.2d at 183-86. "If a statute is unconstitutional, it is and has always been a legal nullity." *State ex rel. Evans v. Bhd. of Friends*, 41 Wn.2d 133, 143, 247 P.2d 787 (1952). Ms. Newell requests a resentencing at which the court will rely on an offender score that ignores those invalid convictions. The State does not oppose her request.

18

We reverse Ms. Newell's conviction for second degree possession of stolen property and otherwise affirm her convictions. We remand with directions to dismiss the stolen property charge with prejudice and for resentencing.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, A.C.J.

WE CONCUR:

_____
Lawrence-Berrey, J.

_____
Fearing, J.